**UNITED STATES of America**

v.

**Solomon ABRAHAM, Defendant.**

**CRIMINAL NO. 98–249 (JBS).**

United States District Court,
D. New Jersey.

Nov. 23, 1998.

Faith Hochberg, U.S. Atty. by Paula T. Dow, Asst. U.S. Atty., Newark, NJ, for U.S.

Richard Couglin, Federal Public Defender by Lisa C. Evans, Asst. Federal Public Defender, for the Dist. of N.J., Camden, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

According to the government, defendant Solomon Abraham is guilty of conspiring with others to sell used automobiles with the mileage odometers rolled back. Pursuant to a plea agreement, Israel Einhorn plead guilty to some of the same illegal conduct alleged in Abraham's indictment, and the government will allege at trial that Abraham and Einhorn, among others, were co-conspirators in this crime. Einhorn's plea agreement stated that in exchange for his cooperation, including providing substantial assistance to the government (such as testifying against Abraham), the government would move this Court, pursuant to Section 5K1.1 of the Sentencing Guidelines, for a downward departure of Einhorn's sentence. This opinion concerns the legality of that agreement—namely, testimony pursuant to a cooperating plea agreement under Title 18, United States Code, Section 201(c)(2) and Rule 3.4(b) of the New Jersey Rules of Professional Conduct.

Defendant asks this Court to suppress Einhorn's anticipated testimony [1] (Def.'s Br. at 11–13), alleging that the United States commits a crime if it offers or promises the prospect of leniency to Einhorn in return for substantial assistance in the prosecution of Abraham, possibly including trial testimony, because of the proscription of such offers or promises under federal criminal law at 18 U.S.C. § 201(c)(2). Defendant's argument rests on the same reasoning that lies behind the now vacated opinion of the Tenth Circuit in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998). For the reasons that are stated herein, this Court, like the majority of courts that have considered the issue, rejects

---

1. The Defendant also asks this Court to suppress the testimony of any other government witnesses testifying pursuant to a plea agreement. As the identity and plea agreements of those possible witnesses are as of yet unknown, Defendant's motion will be denied as to those other witnesses, without prejudice to his ability to re-raise such a motion when and if such other witnesses become known.

the *Singleton* reasoning and holds that Israel Einhorn's testimony will not be suppressed due to the fact that it is procured through a cooperating plea agreement, and the Court holds that the criminal witness bribery statute in 18 U.S.C. § 201(c)(2) does not preclude such testimony.

## I. BACKGROUND

The facts of the present case are as follows. On May 15, 1998, Solomon Abraham was named in a fifteen count indictment. which alleges that he knowingly and intentionally conspired with others to sell used automobiles with rolled back mileage odometers to consumers in New Jersey and elsewhere. Additionally, the indictment alleges that, in furtherance of the conspiracy, Defendant: 1) altered the mileage readings on title documents to match the lower reading on the automobiles; 2) used forged reassignment documents to transfer the titles of the used motor vehicles; 3) applied for new motor vehicle titles in New Jersey by submitting altered titles; and 4) certified to buyers and to the New Jersey Department of Motor Vehicles that the lowered mileage reading was accurate. The aforementioned acts were in violation of: 18 U.S.C. §§ 371, 2314 and 2; 15 U.S.C. §§ 1988(b) and 1990(c); and 49 U.S.C. §§ 32705(a)(1), 32705(a)(2), and 32709(b).

Israel Einhorn was indicted for related illegal conduct. On August 20, 1997, Einhorn, who is alleged to be one of Defendant's co-conspirators, plead guilty to Counts 2 through 5 of Indictment 97–121. Einhorn's written plea agreement[2] states that in exchange for his full cooperation, the government will move the sentencing judge, pursuant to Section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable range. (Def.'s Ex. C.)[3] Full cooper-

2. The government has produced to defense counsel copies of the Israel Einhorn plea agreement (dated August 12, 1997), upon which I had questioned Einhorn, his attorney, and the attorney for the United States in open court on August 20, 1997 before accepting Einhorn's plea of guilty pursuant to Rule 11, Fed.R.Civ.P.

3. Einhorn's plea agreement, filed August 20, 1997, states in the parts most pertinent to cooperation as follows:

Einhorn shall cooperate fully with these Offices. As part of that obligation, Einhorn shall truthfully disclose all information concerning all matters about which these Offices and other Government agencies designated by these Offices may inquire of him. Einhorn also shall make himself available at all reasonable times requested by representatives of the Government and shall truthfully testify in all proceedings, including grand jury and trial proceedings, as to any subject about which he is questioned. Furthermore, Einhorn agrees to provide to these Offices, upon request, all documents and other materials relating to matters about which these Offices inquire of him.

Should Einhorn withdraw from this agreement, or should Einhorn commit any additional federal, state, or local crimes, or should it be established that Einhorn has intentionally given materially false, incomplete, or misleading testimony or information or otherwise has violated any provision of this agreement, the non-prosecution provisions of this agreement shall be null and void. All other provisions of this agreement shall remain in full force and effect. If the non-prosecution provisions of this agreement become null and void because of Einhorn's actions or omissions, Einhorn shall

thereafter be subject to prosecution for any federal criminal violation of which these Offices have knowledge, including, but not limited to, perjury and obstruction of justice....

The sentence to be imposed upon Einhorn is within the sole discretion of the sentencing judge. These Offices cannot and do not make any representation or promise as to what guideline range will be found applicable to Einhorn, or as to what sentence Einhorn ultimately will receive. Except as otherwise provided in this agreement, these Offices reserve their right to take any position with respect to the appropriate sentence to be imposed on Einhorn by the sentencing judge. In addition, these Offices will inform the sentencing judge and the U.S. Probation Office of: (1) this agreement; (2) the nature and extent of Einhorn's activities and relevant conduct with respect to this case; (3) the full nature and extent of Einhorn's cooperation with these Offices and when such cooperation commenced; and (4) all other information relevant to sentencing, favorable or otherwise, including information provided by Einhorn before and after signing this agreement.

Further, if Einhorn fully complies with this agreement and, prior to his sentencing, provides substantial assistance in the investigation or prosecution of one or more persons who have committed offenses, these Offices will move the sentencing judge, pursuant to Section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable guideline range. Whether the sentencing judge does in fact impose a sentence below the otherwise applicable guideline range is a matter commit-

ation, in this case, includes truthfully testifying at grand jury proceedings and at trial. Einhorn has not yet been sentenced.

Defendant infers that because Einhorn has not yet testified against Defendant at trial, the government is holding off on sentence recommendation until it has heard Einhorn's testimony. According to Defendant, it would appear that Einhorn's testimony "is being secured with the inducement that he will receive a more lenient sentence," in clear violation of 18 U.S.C. § 201(c)(2) and the New Jersey Rules of Professional Conduct. (Def.'s Br. at 12–13.)

At oral argument, the United States assured this Court that its plea agreement with Einhorn does not, and will not, contain any provisions that make the government's sentence recommendation reliant on the particular testimony that Einhorn gives at trial. Assistant United States Attorney Paula Dow explained to the court that "full cooperation" could mean that the witness in question has provided valuable assistance in any number of ways, from testifying to simply providing information. In Einhorn's case, she averred, the prospect of a motion for leniency arising from his cooperation is not contingent upon the outcome of Abraham's trial. Moreover, she assured this Court that the written plea agreement is the complete agreement; no other promises—for monetary or other rewards—were made to Einhorn.

## II. *DISCUSSION*

Section § 201(c)(2) of the Criminal Code states that:

> Whoever, directly or indirectly, gives, offers or promises any thing of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon

trial, hearing, or other proceeding, before any court, ... shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2). The New Jersey Rules of Professional Conduct likewise prohibit such actions:

> A lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

N.J. Rules Prof'l Conduct 3.4(b). According to defendant, Einhorn's plea agreement violates the clear and unambiguous meaning of both rules.

Defendant recognizes that the opinion of the 10th Circuit in *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998) has been vacated for rehearing en banc, but nonetheless relies on the entire legal argument set forth in that case, following the same path as did the Southern District of Florida in *United States v. Lowery*, 15 F.Supp.2d 1348 (S.D.Fla.1998) (granting defendant's motion to suppress the anticipated testimony of co-defendants). The *Lowery* court, together with *United States v. Revis*, 22 F.Supp.2d 1242, 1998 WL 713229 (N.D.Okla.1998) and *United States v. Fraguela*, 1998 WL 560352 (E.D.La. Aug. 27, 1998), are the only courts thus far finding agreement with the *Singleton* panel's decision. Every other court which has visited the issue has held that prosecutors do not violate the federal criminal statute prohibiting gratuities to witnesses by engaging in the historical and Congressionally-sanctioned practice of requesting leniency to cooperating witnesses who testify truthfully against criminal defendants. See *United States v. Romero*, 1998 WL 788799 (S.D.N.Y. Nov.10, 1998); *United States v.*

---

ted solely to the discretion of the sentencing judge. The determination whether Einhorn has provided substantial assistance to the Government rests solely in the discretion of these Offices. Einhorn may not withdraw his plea if these Offices determine that Einhorn has not rendered substantial assistance or if the Court refuses to grant the Government's motion for a downward departure.

. . . . .

This agreement constitutes the full and complete agreement between Einhorn and the

United States Attorney for the District of New Jersey and the Office of Consumer Litigation of the Department of Justice and supersedes any previous agreement. No other additional promises, agreements, or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by the parties.

*Moore,* 1998 WL 778073 (N.D.Ill. Nov.2, 1998); *United States v. Crumpton,* 23 F.Supp.2d 1218, 1998 WL 764804 (D.Colo. 1998); *Nero v. United States,* 1998 WL 744031 (E.D.Pa. Oct.23, 1998); *United States v. White,* 27 F.Supp.2d 646, 1998 WL 758830 (E.D.N.C.1998); *United States v. Nieves,* 1998 WL ⁻⁷⁰835 (D.Conn. Oct.13, 1998); *United States v. Hammer,* 25 F.Supp.2d 518, 1998 WL 725211 (M.D.Pa.1998); *United States v. Buckley,* 1998 WL 774634 (D.Kan. Oct. 7, 1998); *United States v. Laureano,* 1998 WL 696006 (S.D.N.Y. Oct.7, 1998); *United States v. Szur,* 1998 WL 661484 (S.D.N.Y. Sept.24, 1998); *United States v. Durham,* 1998 WL 684241 (D.Kan. Sept.11, 1998); *United States v. Mejia,* 1998 WL 598098 (S.D.N.Y. Sept.8, 1998); *United States v. Juncal,* No. 97–CR–1162, 1998 WL 525800 (S.D.N.Y. Aug.20, 1998); *United States v. Gabourel,* 9 F.Supp.2d 1246 (D.Colo. 1998); *United States v. Dunlap,* 17 F.Supp.2d 1183 (D.Colo.1998); *United States v. Pungitore,* 15 F.Supp.2d 705 (E.D.Pa. 1998); *United States v. Eisenhardt,* 10 F.Supp.2d 521 (D.Md.1998) ("[T]he under-signed ... concluded that [the vacated *Singleton* decision] was amazingly unsound, not to mention nonsensical.... The chances of ... the Supreme Court reaching the same conclusion as the *Singleton* panel are, in this Court's judgment, about the same as discovering the entire roster of the Baltimore Orioles consists of cleverly disguised leprechauns."); *United States v. Guillaume,* 13 F.Supp.2d 1331 (S.D.Fla.1998); *United States v. Reid,* 19 F.Supp.2d 534, 1998 WL 481459 (E.D.Va.1998); *United States v. Arana,* 18 F.Supp.2d 715 (E.D.Mich.1998) (holding the result of the *Singleton* panel to be an "absurdity"); *United States v. Duncan,* No. 97–CR–217, 1998 WL 419503 (E.D.La. July 15, 1998); *United States v. Jefferson,* No. 97–276 (MJD/JGL), slip op. at 2 (D.Minn. July 8, 1998).

This Court agrees with the United States and the weight of authority that the reasoning behind the *Singleton* opinion is incorrect. First, the plain wording of § 201(c)(2) does not apply to the United States as a sovereign. Second, Congress did not intend to overturn the long-standing practice, acknowledged and approved by a century of Supreme Court jurisprudence, of allowing cooperating defendants to testify even though they expect the benefit of leniency or a pardon. Third, Congress has passed a host of statutes allowing prosecutors and courts to confer benefits in return for testimony; to find that 18 U.S.C. § 201(c)(2) prohibits such a practice would nullify and render meaningless each of these other statutes. The following subparts will address each of these points.

A. *Whether 18 U.S.C. § 201(c)(2) Includes the United States*

■ A court interpreting a federal statute must first attempt to give that statute its plain meaning unless doing so leads to clearly unintended and absurd results. The *Singleton* panel held that because § 201(c)(2) says "whoever," it was intended to include the United States in its sovereign capacity. This reading is not correct. *See Juncal,* 1998 WL 525800, at *1.

■ The Dictionary Act defines "whoever" in a manner that does not expressly include the federal government, but rather includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Moreover, as the *Singleton* panel acknowledged, "[t]he Supreme Court has recognized a limited canon of construction which provides that statutes do not apply to the government or affect governmental rights unless the test expressly includes the government." 144 F.3d at 1345 (citing *United States v. Nardone,* 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314 (1937); *United States v. Herron,* 87 U.S. 251, 255, 20 Wall. 251, 22 L.Ed. 275 (1873)).

Section 201(c)(2) does not expressly include the government, so the presumption should control. I disagree with the *Singleton* panel's finding that the statute should nonetheless apply to the United States because it does not limit the sovereign's interests but rather is necessary to prevent "fraud, injury, or wrong." 144 F.3d at 1346. This statute, if read to cover the United States and not merely its agents, most definitely does restrict the sovereign's interests, for it is the United States, not individual

agents, that enters into plea agreements, *see, e.g.,* 18 U.S.C. § 3553(e), and these plea agreements are widely recognized as a crucial means to obtaining convictions and enforcing the law.

Even if the statute could apply to federal law enforcement agents, rather than the United States itself, the broad interpretation sought by the defense is not necessary to prevent illegality, for individual prosecutors are already prohibited from, and punished for, acting wrongly. *See* 18 U.S.C. § 201(b)(3) (liability for bribing a witness); 18 U.S.C. § 1512(b). Moreover, plea agreements must be approved by the district court and are subject to disclosure and must be disclosed by the government to defense counsel as a basis of impeachment of the witness's testimony, as required by *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and its progeny. Such disclosure and cross-examination limit greatly the possibility of fraud and illegality and leave the matter of assessing the witness's credibility and self-interest in the hands of the jury before whom this impeaching evidence has been disclosed. *United States v. DeLarosa,* 450 F.2d 1057, 1060 (3d Cir.1971). Such a plea agreement, as in the instant case, is entered into by the United States through the United States Attorney, and is therefore not within the statutory reach of the "whoever" clause of § 201(c)(2).

■ Furthermore, a reading of § 201(c)(2) as given by the *Singleton* panel would lead to absurd results. Many offenses are "of such a character that the only persons capable of giving useful testimony are those implicated in the crime." *Kastigar v. United States,* 406 U.S. 441, 446, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Courts may ignore the plain meaning of the words of the statute in order to avoid the absurd result that would follow the prohibition of all such testimony in criminal and civil enforcement cases. *See United States v. Granderson,* 511 U.S. 39, 47 n. 5, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). Additionally, if the *Singleton* reading were correct, federal judges would be criminals too if, for instance, they granted a motion by the government for a downward departure for substantial cooperation under U.S.S.G.

§ 5K1.1 for a cooperating trial witness. If § 201(c)(2)'s language of "whoever" includes the United States, why not judges? They confer benefits under the immunity statute, too. For all of these reasons, the *Singleton* panel's reasons for departing from the presumption against including the United States where the statute has not expressly done so do not hold up.

■ Finally, a statute which criminalizes conduct is to be given a narrow meaning under the "rule of lenity." *United States v. Enmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973); *United States v. Long,* 654 F.2d 911, 914 (3d Cir.1981) (penal statutes should be strictly construed). Under the rule of lenity, the meaning of a criminal statute such as § 201(c)(2) is not to be stretched to its farthest reach to criminalize conduct. If the "whoever" clause is construed as criminalizing judicially approved plea bargaining by the United States in connection with a cooperating witness whose testimony may offer substantial assistance, the statute has been stretched far beyond its natural and ordinary purpose, which would offend this principle of statutory construction.

### B. *Long–Standing Practice*

■ Even if the plain meaning of § 201(c)(2) were unclear, a second tenet of statutory construction leads to the same outcome: "A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). When legislation is claimed to have fundamentally altered an "ingrained" practice with historical roots dating back centuries, a court should not accept that interpretation without express statutory language or at least legislative history reflecting congressional intent to effectuate the change. In this instance, there is a long-standing tradition of offering leniency to cooperating defendants who will testify in a case, dating back to English law predating the American Revolution, and nothing in the legislative history or language of 18 U.S.C.

§ 201(c)(2) indicates that Congress intended to change this.

As early as the 1870s, the Supreme Court recognized that it was fair to allow a witness who confessed and testified against another to ask the court to stop his own prosecution so he could petition the executive for "mercy," so as to give "a kind of hope to the accomplice that if he behaves fairly and discloses the whole truth, he may, by a recommendation to mercy, save himself from punishment and secure a pardon." *The Whiskey Cases (United States v. Ford)*, 99 U.S. 594, 599–600, 9 Otto 594, 25 L.Ed. 399 (1878) (citing *Rex v. Rudd*, 99 Eng. Rep. 1114 (1775)). More recently, the Court repeated this same theme, noting that "[i]nsofar as the general attack upon the use of informers is based upon historic 'notions' of 'English-speaking peoples,' it is without historical foundation." *Hoffa v. United States*, 385 U.S. 293, 310–12, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The Court quoted Judge Learned Hand: " 'courts have countenanced the use of informers from time immemorial[.]' " *Id.* (citation omitted). It is not that informers do not have a motivation to lie, the Court said; it is just that our system of cross-examination and jury determinations of credibility can act as safeguards against untruths. *Id.* Over the years, the fact the our system does have safeguards has evidenced itself in Supreme Court decisions in this area again and again.[4] Moreover, every federal court of appeals with jurisdiction over criminal cases has allowed testimony by cooperating witnesses in return for sentencing or financial considerations.[5]

These Court opinions suggest strongly a long tradition in this country of doing exactly what the government has done here with Israel Einhorn. While 18 U.S.C. § 201(c)(2) would prohibit paying a witness (monetarily or otherwise) for specific, untrue testimony (and refusing to pay if the testimony is not exactly what was sought or if the testimony does not result in a conviction),[6] its statutory language does not prohibit, as here, offering leniency to a cooperating defendant who fulfills his promise of truthful testimony. Nor does the legislative history to 18 U.S.C. § 201(c)(2) point to a different conclusion. Congress, if it intended to change the existing practice of prosecutorial offers of leniency for cooperating witnesses, must have utterly concealed any mention of this intention in its legislative history.

## C. *Other Congressional Statutes*

■ Furthermore, Congressional intent to change the long-standing practice of offering leniency for testimony seems highly unlikely given the host of other statutes which Congress has promulgated that allow prosecutors to confer benefits in exchange for testimony. Thus, a third rule of statutory construction comes into play, namely, that where two or

---

4. *See, e.g., Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecution promises of leniency are impeachment evidence that must be disclosed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but they do not make a witness incompetent to testify); *Lisenba v. California*, 314 U.S. 219, 227, 62 S.Ct. 280, 86 L.Ed. 166 (1941) ("the practice of taking into consideration, in sentencing an accomplice, his aid to the state in turning state's evidence can be no denial of due process to a convicted confederate"); *Benson v. United States*, 146 U.S. 325, 333–37, 13 S.Ct. 60, 36 L.Ed. 991 (1892); *United States v. Murphy*, 16 Pet. (41 U.S.) 203, 211, 10 L.Ed. 937 (1842) ("person who is to receive a reward for or upon the conviction of the offender ... is universally recognized as a competent witness").

5. *United States v. Morgan*, 942 F.2d 243, 247 (4th Cir.1991); *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C.Cir.1988); *United States v. Cervantes–Pacheco*, 826 F.2d 310, 315 (5th Cir.

1987); *United States v. Persico*, 832 F.2d 705, 716–17 (2d Cir.1987); *United States v. Valona*, 834 F.2d 1334, 1344 (7th Cir.1987); *United States v. Spector*, 793 F.2d 932, 936–37 (8th Cir. 1986); *United States v. Dailey*, 759 F.2d 192, 198–99 (1st Cir.1985); *United States v. Valle–Ferrer*, 739 F.2d 545, 546–47 (11th Cir.1984); *United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1338 n. 19 (9th Cir.1977); *United States v. De Larosa*, 450 F.2d 1057, 1060 (3d Cir.1971); *United States v. Grimes*, 438 F.2d 391, 395–96 (6th Cir.1971).

6. Indeed the legislative history behind the 1948 predecessor to § 201(c)(2) indicated that Congress enacted that provision "to mak[e] it unlawful to offer a bribe to a witness" (Revisor's Note). The legislative history of the 1962 revision to the current § 201(c)(2) stated that it "would make no significant changes of substance." S.Rep. No. 2213, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.C.C.A.N. 3852, 3853.

more statutes facially conflict in their meaning or application, the more recent statute shall usually be deemed to govern, and thus to express the congressional intent. *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). Since it enacted § 201(c)(2), Congress has erected a statutory and regulatory scheme that affirmatively encourages the offer of leniency. As the Supreme Court recently recognized in *United States v. Mezzanatto*, 513 U.S. 196, 207, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), plea bargaining, which is encouraged by Fed. R.Crim.P. 11 and Fed.R.Evid. 410, often requires the prosecutor to decide "whether to extend leniency or full immunity to some suspects in order to procure testimony against other, more dangerous suspects" because "prosecutors often need help from the small fish in a conspiracy in order to catch the big ones." 513 U.S. at 207, 208, 115 S.Ct. 797. By encouraging plea bargaining, Congress approved the very practices that the *Singleton* panel found to violate federal law. The issue thus arises whether congressional action since the 1962 recodification of § 201(c)(2) expresses a more reliable congressional intent as to the meaning of § 201(c)(2).

At least three other statutes authorize prosecutors to offer leniency in return for testimony, indicating strongly that § 201(c)(2) was not meant to make the practice illegal. First, the Sentencing Reform Act of 1984, as amended, contains three provisions authorizing sentencing reduction upon the government's motion for cooperators who provide "substantial assistance in the investigation *or prosecution of* another" criminal (emphasis added). *See* 18 U.S.C. § 3553(e) (reduction below minimum statutory sentence); 28 U.S.C. § 994(n) (requiring Sentencing Commission to allow guideline reductions); U.S.S.G. § 5K1.1 (allowing government motions for sentence reduction when a defendant provides substantial assistance); Fed.R.Crim.P. 35(b) (reduction for post-sentencing cooperation). Contrary to the *Singleton* panel's assertion, 144 F.3d at 1355, "substantial assistance in ... prosecution" must include "testimony," for other than by testifying, a cooperating defendant's help would aid the investigation, not the

prosecution—and the Sentencing Act mentions both investigation and prosecution. *(See Guillaume*, 13 F.Supp.2d at 1334). Under these rules, it is not only permissible for a cooperating defendant to testify, but encouraged, with the court being required to consider the witness's "truthfulness, completeness, and reliability" in determining whether to accept the prosecutor's recommendation under § 5K1.1(a)(2). Thus the Sentencing Act itself contradicts the *Singleton* panel's reading of § 201(c)(2).

Second, Congress has long authorized prosecutors to confer immunity on witnesses in return for testimony. *See Kastigar*, 406 U.S. at 445–47, 92 S.Ct. 1653 (outlining history of immunity statutes dating back to the 18th century). The current immunity statute, 18 U.S.C. §§ 6001–6005, specifically allows federal prosecutors to give immunity to a witness to obtain testimony in any judicial proceeding. The *Singleton* panel realized that it would be absurd if the immunity statute allowed prosecutors to give a benefit for testimony but § 201(c)(2) prohibited that same act; to avoid the absurdity, the panel noted that the government does not itself afford the benefit of immunity, but rather moves the court to grant it, so § 201(c)(2) does not implicate the immunity statute. This reading of the immunity statute is both hypertechnical and strained. The government "benefits" a defendant every bit as much by moving for immunity pursuant to 18 U.S.C. § 6003 as it does in recommending a downward departure from the sentencing guideline range. If § 201(c)(2) makes leniency for testimony illegal, that reasoning would apply equally to grants of immunity, and there is no doubt that Congress intended to allow offers of immunity in return for truthful testimony.

Third, the Witness Relocation and Protection Act authorizes the Attorney General to provide things of value, such as housing, living expenses, and other services, in return for the protected witness's agreement "to testify" and to otherwise cooperate. *See* 18 U.S.C. § 3521(b)(1) and (d)(1)(A). The Act is not limited to other assistance, but specifically includes testimony.

As the *Singleton* panel noted, it is a " 'classic judicial task' " to " 'reconcil[e] many laws enacted over time, and get [ ] them to make sense in combination.' " 144 F.3d at 1348 (quoting *United States v. Fausto*, 484 U.S. 439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)). The panel failed to do this. In the present case, the only way that § 201(c)(2) can be consistent with the complex statutory scheme in existence both before and after § 201(c)(2) was enacted is to read it to exclude from its scope promises of leniency made by government attorneys in a plea agreement to obtain truthful testimony for use in a federal criminal proceeding.

### III. *CONCLUSION*

For all of the foregoing reasons, this Court holds that 18 U.S.C. § 201(c)(1) does not exclude, wholesale, testimony procured from cooperating defendants pursuant to a plea agreement in exchange for leniency in the United States' sentence recommendations. This is not to say that § 201(c)(1) would never operate to bar testimony sought in exchange for leniency. There may, indeed, be situations in which suppression of testimony will be appropriate, such as if an agreement calls for untruthful testimony, or perhaps where the prosecutor promises to the cooperating witness a contingent fee predicated upon the outcome of trial. But this is not such a situation and those issues need not be considered. Here, the United States has assured the Court that the Einhorn plea agreement is the total agreement, that no other promises are involved, and that its agreement to seek a downward departure at the time of Einhorn's sentencing is to be triggered by the "substantial assistance" offered by Einhorn, and not by the outcome of Abraham's trial. Accordingly, there is no just cause to suppress Israel Einhorn's testimony. Defendant's motion to suppress the testimony of Israel Einhorn as a violation of 18 U.S.C. § 201(c)(1) and New Jersey Rule

of Professional Conduct 3.4(b)[7] will be denied.

---

**7.** Defendant's argument about Rule 3.4(b) is very much predicated on his arguments about § 201(c)(1), for the charge is that there is an ethical problem with a lawyer offering "an inducement to a witness that is prohibited by law." As this Court has now found that there was has been no offer of an inducement prohibited by law, the Rule 3.4(b) claim fails as well.