**John DOE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. Civ.A. 99–912.**

United States District Court, D. New Jersey.

Aug. 23, 2000.

Patrick A. Mullin, Hackensack, NJ, for petitioner.

Gary N. Wilcox, Assistant U.S. Attorney, Office of the U.S. Attorney, Newark, NJ, for respondent.

## OPINION

WOLIN, District Judge.

This matter is opened before the Court upon the petition of John Doe [1] ("petitioner") for a writ of habeas corpus to vacate, set aside, or correct his sentence and to withdraw his guilty plea pursuant to 28 U.S.C. § 2255. Petitioner has also moved to amend his petition pursuant to Federal Rule of Civil Procedure 15. The petition has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion to amend will be granted, but the petition will be denied.

## BACKGROUND

Petitioner was arrested on June 3, 1996 after agreeing with an undercover customs agent to retrieve 48 kilograms of cocaine from a ship in Port Newark. Following his arrest, petitioner admitted to his involvement in another scheme to smuggle 125 kilograms of cocaine into the United States. Petitioner was unaware that this quantity of drugs had already been seized by United States Customs at the time of his arrest.

Petitioner was charged under 21 U.S.C. §§ 841, 846 for conspiring to distribute more than 5 kilograms of cocaine. Petitioner pled guilty as part of a cooperating plea agreement with the government. The parties stipulated that the defendant conspired to purchase 48 kilograms, seemingly ignoring the 125 kilogram quantity. In the presentence report, however, the probation officer recommended that the Court consider both drug deals, totaling 173 kilograms of cocaine, when sentencing petitioner. The Court accepted this recommendation and sentenced the defendant accordingly.

Petitioner has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, accompanied by a supplemental memorandum of law, challenging the constitutionality of his proceedings. Pursuant to Federal Rule of Civil Procedure 15(a), petitioner has also filed a motion for leave to amend his petition along with the proposed amendment and a supplemental brief advancing his amended petition.

## THE MOTION TO AMEND

A motion to amend a section 2255 pleading is governed by Federal Rule of Civil Procedure 15 and 28 U.S.C. § 2242 (permitting an application for a writ of habeas corpus to be amended using the rules applicable to civil actions); *see also United States v. Duffus*, 174 F.3d 333, 336 (3d Cir.1999). Under Rule 15(a), a party may amend his petition twenty days after it has been served "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). The Court does not have unbridled discretion in its consideration of such a motion. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."). On the contrary, "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Moreover, the Court must have a "substantial reason to deny leave to amend." *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir.1984) (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir.1981)). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive,

---

1. This matter is under seal pursuant to an Order of this Court dated February 15, 2000.

The Court has re-captioned the matter so that this Opinion may be published.

prejudice, and futility." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir.1997); *see also Foman*, 371 U.S. at 182, 83 S.Ct. 227.

■ A motion to amend, where the amended claims are barred by the statute of limitations, can be denied for futility. *See United States v. Pittman*, 209 F.3d 314, 318 (4th Cir.2000); *see also Duffus*, 174 F.3d at 338. In general, a section 2255 petition is subject to a limitations period of one year from the date on which the judgment of conviction becomes final, and petitioner's motion to amend, in the instant case, exceeds this time limit. However, petitioner's claim is not time-barred where is filed one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 (2000). Petitioner argues, with the advent of *Apprendi v. New Jersey*, — U.S. —, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that his sentence is unconstitutional on Fifth and Sixth Amendment grounds. The Supreme Court has not yet decided how, if at all, the *Apprendi* decision impacts the Sentencing Guidelines. However, in her dissent, Justice O'Connor suggests that the decision may affect current, determinate-sentencing schemes. *Id.*, at 2366. In light of the constitutional issues raised in *Apprendi* and Justice O'Connor's dissent, the Court will grant petitioner's motion for leave to amend and will consider the submitted amendment and supplemental brief as part of his petition.

## DISCUSSION

■ A federal writ of habeas corpus shall issue where the petitioner is being held "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

28 U.S.C. § 2255. In the interest of justice, the Court will read this *pro se* petition liberally. *See Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Todaro v. Bowman*, 872 F.2d 43, 44 n. 1 (3d Cir.1989); *Hurd v. Romeo*, 752 F.2d 68, 70 (3d Cir.1985).

### 1. The Supreme Court's Holding in *Apprendi v. New Jersey*

■ Petitioner argues that the Court's determination of the applicable drug quantity, for sentencing purposes, was contrary to petitioner's rights to due process and trial by jury. It is well-settled practice that the Court decides what conduct is relevant (including the applicable quantity of drugs) when selecting the appropriate range under the United States Sentencing Guidelines. *See* U.S.S.G. § 1B1.3; *Edwards v. United States*, 523 U.S. 511, 513–14, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) ("The Sentencing Guidelines instruct the judge in a case like this one to determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable—and then to impose a sentence that varies depending upon the amount and kind."); *United States v. Collado*, 975 F.2d 985 (3d Cir. 1992); *United States v. Mitchell*, No. CRIM. 95–00252–03, 1999 WL 1129628 (E.D.Pa. Nov.30, 1999). The Court determines the relevant conduct based upon a preponderance of the evidence. *See United States v. Paulino*, 996 F.2d 1541 (3d Cir.1993); *United States v. McDowell*, 888 F.2d 285 (3d Cir.1989). According to petitioner, this practice cannot be reconciled with the *Apprendi* ruling.

In *Apprendi*, the Supreme Court overturned a sentencing scheme that allowed a state judge, by a preponderance of the evidence, to enhance a defendant's penalty beyond the prescribed statutory maximum sentence. Defendant was charged with second-degree possession of a firearm for an unlawful purpose. Upon conviction for

this crime, the state statute provides for a sentence of five to ten years. Apprendi pled guilty. Then the state moved under a separate statute to enhance Apprendi's sentence under New Jersey's "hate crime" law, because the defendant had "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Apprendi*, — U.S. at ——, 120 S.Ct. at 2351 (quoting N.J.S.A. § 2C:44–3(e)).

Applying the hate-crime law, and reviewing the evidence under the preponderance of the evidence standard, the judge enhanced Apprendi's sentence to ten to twenty years of imprisonment. *Id.* at 2363. The enhanced sentence was similar to the sentence for first-degree unlawful possession, although petitioner had only been charged and convicted of the second-degree offense. *Id.* The Supreme Court overruled, concluding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2363–64.

■ Petitioner's case does not fall within the *Apprendi* ruling. First, petitioner was not sentenced beyond the statutory maximum. According to 21 U.S.C. § 841, where five kilograms or more of cocaine are attributed to the defendant, "such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." Petitioner does not contest his participation in an offense involving at least five kilograms of cocaine, and his sentence of 151 months is clearly within the statutory boundaries.

Furthermore, petitioner was not sentenced under an additional statute, not referenced in the indictment and plea agreement, as the case was in *Apprendi*. In *Apprendi*, the defendant was given no notice that his admission of guilt on one count subjected him to the penalties of another statute. Petitioner, in the instant case, pled guilty to violating 21 U.S.C. §§ 841, 846 and was sentenced under

these sections only. The government did not move the court to enhance petitioner's penalty under a collateral law; and the Court did not make any finding of guilt not already conceded by petitioner in the plea agreement. (*See* Government Exhibit B (indicating petitioner's admission of guilt under 21 U.S.C. §§ 841, 846)).

Therefore, the Court's factual finding with regard to the specific drug quantity petitioner conspired to distribute was not the type of determination invalidated by the Supreme Court. The Court's finding merely aided it in fashioning an appropriate sentence within the limits set forth by 21 U.S.C. § 841. Moreover, the drug quantity information, along with other factors such as the defendant's prior criminal history, permitted the Court to set a sentence proportionate to the crime and to the defendant, by distinguishing petitioner's case from other defendants convicted of conspiring to distribute more than five kilograms of cocaine. The *Apprendi* decision does not prohibit the use of such information in sentencing.

In fact, the *Apprendi* decision explicitly reaffirmed the Supreme Court's decision in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in which the Court upheld the use of sentencing factors. *See Apprendi*, — U.S. at ——–——, 120 S.Ct. at 2360–61. In *McMillan*, the Supreme Court examined a Pennsylvania statute authorizing a mandatory minimum sentence of five years for persons convicted of certain enumerated felonies, "if the sentencing judge finds, by a preponderance of the evidence, that the person 'visibly possessed a firearm' during the commission of the offense." *See McMillan*, 477 U.S. at 81, 106 S.Ct. 2411.

The *McMillan* Court concluded that the state is not obliged to prove sentencing factors beyond a reasonable doubt before a jury. *See*, 477 U.S. at 93, 106 S.Ct. 2411. The Court based its ruling, in part, on the Court's holding in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281

(1977). In *Patterson*, the Supreme Court upheld the constitutionality "of burdening the defendant in a New York State murder trial with proving the affirmative defense of extreme disturbance as defined by New York law." *See id.* at 198, 97 S.Ct. 2319. The Court explained that a state does not need to "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." *See id.* at 207, 97 S.Ct. 2319.

In addition to the *Apprendi* Court's limitation of its holding not to reach sentencing schemes where the factors do not enhance the defendant's penalty above the statutory maximum, this Court takes note of the recent Supreme Court decision in *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). In *Edwards*, the Court recognized the authority of the judge, under the Sentencing Guidelines, to make factual determinations for sentencing purposes. *See id.* Therefore, the Court finds that the Sentencing Guidelines, as they relate to petitioner's case, have not been rendered unconstitutional by *Apprendi v. New Jersey*.

**2. Bribery Claim under 18 U.S.C. § 201(c)(2)**

■ Petitioner argues that the government violated 18 U.S.C. § 201(c)(2) by its use of a confidential informant in its investigation. Section 201(c) states:

> Whoever ... directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c). In the instant case, the government offered the possibility of leniency in sentencing to an informant who assisted in an investigation that ultimately led to petitioner's arrest. Such an exchange, petitioner contends, violates the plain meaning of the statute.

Given petitioner's lack of precedential support, the Court is compelled to reject the 18 U.S.C. § 201(c)(2) claim. Instead, the Court adopts the government's reasoning which closely parallels the court's opinion in *United States v. Abraham*, 29 F.Supp.2d 206 (D.N.J.1998).

In *Abraham*, a cooperating defendant was called to testify for the government against Abraham in an effort to satisfy the "substantial assistance" requirement of the cooperating defendant's plea agreement. *Id.* at 211. In return, the government agreed to move, pursuant to section 5K1.1 of the Sentencing Guidelines, for a downward departure of the cooperating defendant's sentence. *Id.* Abraham moved to suppress any testimony given by the cooperating defendant, claiming that the government was bribing its witness in violation of 18 U.S.C. § 201. The district judge denied the motion, explaining that the United States is not included by the term "whoever" in the statute, that Congress did not intend to overturn the longstanding practice of providing benefits for cooperation, and that other existing Congressional statutes permitting this type of exchange contradict the defendant's interpretation of the statute. *See Abraham*, 29 F.Supp.2d at 210–14.

The view that cooperating agreements between defendants and the government, in which the government promises leniency or assists the defendant in receiving a more favorable sentence from the court (e.g. downward departure through a section 5K1.1 application under the Sentencing Guidelines), are in violation of 18 U.S.C. § 201(c)(2) was briefly adopted by the Fifth Circuit before being vacated and rejected in an *en banc* decision. *See United States v. Singleton*, 165 F.3d 1297 (10th Cir.1999) (*en banc*). As noted by the court in *United States v. Walker*, "[c]ase law and logic overwhelmingly demonstrate

that the original Singleton opinion and its rationale are simply 'bad law.' " *See United States v. Walker,* Nos. 94–488, 99–584, 2000 WL 378532, at *6 (E.D.Pa. April 4, 2000).

Not only has the original *Singleton* decision been rejected, but it "is not the law of any circuit. In fact, no circuit has come even vaguely close to adopting its reasoning." *United States v. Bullock,* Nos. CRIM.A.95–296–01, CIV.A.98–CV–5072, 1998 WL 826983 (E.D.Pa. Nov.25, 1998). Accordingly, every court in the Third Circuit hearing this argument has refused to follow the first *Singleton* decision. *See Walker,* 2000 WL 378532, at *6. Petitioner's claim, therefore, must be rejected.

**3. Ineffective Assistance of Counsel**

In evaluating this claim, the Court applies a two-prong test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In general, a petitioner's counsel is deemed effective if his performance is reasonable under prevailing professional norms. *Id.* at 688, 104 S.Ct. 2052. The Supreme Court explained in *Strickland* that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. The Court operates under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Second, "the defendant must show that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Because petitioner must demonstrate both ineffectiveness and prejudice, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. To prevail on the prejudice prong,

petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052.

When deciding whether the result is reliable, the Court does not limit its analysis to mere outcome determination. *See Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372, 113 S.Ct. 838. Moreover, where counsel's error creates an imbalance in the adversarial system, and this imbalance inhibits the defendant's ability to receive a fair result, the Court will grant relief. *See Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In the instant case, petitioner outlines seven grounds for relief.

**a. Failure to Accurately Advise on Sentencing Exposure**

Petitioner seeks to vacate his sentence and withdraw his guilty plea pursuant to Rule of Criminal Procedure 32(e) and 28 U.S.C. § 2255, because his plea was not a "voluntary and intelligent choice among the alternative courses of action." *See Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Petitioner also claims that he instructed his attorney, Lee Ginsburg ("Ginsburg"), to move for a withdrawal of his plea following his presentence interview with the probation officer.

Because Ginsburg did not file this motion, petitioner argues that his counsel's performance was deficient. Assuming that Ginsburg should have introduced a motion to withdraw the plea before sentencing, the Court will examine whether his omission prejudiced petitioner's ability to obtain relief. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. Specifically, the Court will determine whether petitioner would have had a reasonable probability of success if

the motion was considered before sentencing. *See id.* at 694, 104 S.Ct. 2052.

Under Rule 32(e),

[i]f a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

Fed.R.Crim.P. 32(e). Applying the prejudice prong to Ginsburg's alleged failure to comply with petitioner's request before sentencing, the Court will employ the more liberal standard of review, requiring "any fair and just reason" to withdraw the plea.

■ In evaluating a motion to withdraw a guilty plea, the Court considers three factors: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by his withdrawal; and (3) the strength of the defendant's reason to withdraw the plea. *See United States v. Jones,* 979 F.2d 317, 318 (3d Cir.1992); *United States v. Morris,* No. CRIM.A.98–133, 1999 WL 675470 (E.D.Pa. Aug.31, 1999).

■ With regard to the third factor, petitioner avers that his attorney failed to provide an accurate prediction of his sentencing exposure. Petitioner has a right to competent counsel during the critical stages of the criminal process, including the plea bargain stage. *See Caruso v. Zelinsky,* 689 F.2d 435 (3d Cir.1982). Moreover, petitioner "has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992) (citing *Hill v. Lockhart,* 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Ginsburg's incompetent advice, petitioner contends, violated the petitioner's Sixth Amendment right to counsel, thereby rendering his plea of guilty involuntary. *See McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Where the plea is not voluntary, the Court will grant relief. *See Day,* 969 F.2d at 47.

Petitioner explains that he was misinformed about his sentencing exposure for two reasons. First, his attorney did not accurately predict his sentence given the facts of his case. Second, the attorney's failure to disclose the full factual background of petitioner's case in the written stipulations attached to the plea agreement and during the plea colloquy, as provided by Rule 11 protocol under the Federal Rules of Criminal Procedure and sections 6B1.1 and 6B1.4 of the Sentencing Guidelines, caused the Court to miscalculate petitioner's base offense level at the plea colloquy. As a result, the Court provided petitioner with an inaccurate estimate of his sentencing exposure during the plea colloquy.

Consequently, petitioner argues that he believed that he was facing a base offense level of thirty-four under the Sentencing Guidelines when he signed the plea agreement and when he entered his plea. He claims to have been under the impression that the Court was bound to accept the parties' stipulation with regard to the drug quantity when fashioning an appropriate sentence. As it turned out, the Court adopted the probation officer's recommendations with regard to the applicable drug quantity and sentenced petitioner under a base offense level of 38.

■ Despite petitioner's contentions, petitioner understood that the plea agreement was not binding on the Court and the sentencing predictions during the plea colloquy were not guarantees. In the plea agreement, petitioner was warned that the sentence is "within the sole discretion of the sentencing judge," and the United States Attorney "does not make any representation or promise as to what guideline range will be found applicable to [Petitioner]." (Government Exhibit B). Likewise, the written agreement explains that the parties' stipulations "[do] not bind the sentencing judge, which may make independent factual findings and may reject any or

all of the stipulations entered into by the parties." (*Id.*).

The Court's colloquy with petitioner further evidences petitioner's actual knowledge of the applicable Sentencing Guidelines. Petitioner stated that he understood the plea agreement and was aware that an inaccurate sentencing prediction did not entitle him to withdraw his plea. (*See* Government Exhibit C). With regard to the stipulations, the Court asked petitioner if he understood that they "are not binding on this Court if the presentence report or other sources persuade the Court of their inaccuracy." (*Id.*). Petitioner replied in the affirmative. Next, the Court informed petitioner that the government cannot guarantee a particular level of offense or criminal history category. (*Id.*). Petitioner stated that he understood this limitation on the plea agreement as well. (*Id.*).

Given the above, and petitioner's own knowledge that he was involved in a drug conspiracy involving 173 kilograms, Ginsburg's failure to explain the possibility that petitioner's sentencing exposure might be increased did not fatally prejudice him. Therefore, the Court finds that petitioner's plea was a voluntary and intelligent decision, and hence properly accepted by the Court.

Thus, petitioner's reason for withdrawing his plea is plainly inadequate. Turning to the other two factors under *Jones*, 979 F.2d at 318, that might support a "fair and just reason" to withdraw a guilty plea, the Court notes first that petitioner does not assert his innocence. Finally, although the government does not have to show prejudice where petitioner fails to present a sufficient basis to withdraw his plea, *see United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir.1995), the Court finds that the government would probably suffer prejudice by having to try petitioner over four years after he was indicted. *See United States v. Dellorfano*, CRIM.A.Nos. 92–27–1, 93–315, 1996 WL 153527 (E.D.Pa. Apr.2, 1996) ("Clearly, the government would be prejudiced by having to prepare for a trial that would occur three years after entrance of a guilty plea."). Therefore, the Court finds that petitioner has failed to present a "fair and just reason" to withdraw his plea under Rule 32(e).

#### b. Failure to Investigate Prior Offenses

Petitioner argues that his criminal history was improperly enhanced by two prior offenses, and his attorney failed to contest these enhancements. He claims that his attorney was ineffective, because he failed adequately to investigate his prior convictions.

■ While petitioner is entitled to effective counsel during the sentencing stage, *see Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, Ginsburg's investigation, or lack thereof, did not affect petitioner's criminal history category. Petitioner argues that a prior conviction for unlawfully dealing in fireworks should not have been considered in his criminal history calculation. The Sentencing Guidelines assign points to all felonies as well as misdemeanor and petty offenses if they are not specifically excluded. *See* U.S.S.G. § 4A1.2(c). A violation for unlawfully dealing in fireworks is not on the list of exclusions. Therefore, petitioner was not prejudiced by Ginsburg's decision not to contest this point.

■ Petitioner also asserts that Ginsburg was incompetent for his failure to contest the constitutionality of a prior conviction. Petitioner cannot collaterally attack a prior state conviction, used for sentencing enhancement, during a federal sentencing hearing, where petitioner has not been denied his right to counsel as guaranteed by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See Custis v. United States*, 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); *United States v. Escobales*, 218 F.3d 259 (D.N.J. 2000). In light of this,

Ginsburg's performance was reasonable on this issue.

### c. Failure to State a Bribery Claim Under 18 U.S.C. § 201(c)(2)

Petitioner argues that Ginsburg was deficient, because he failed to contest the legality, under 18 U.S.C. § 201(c)(2), of the government's use of a confidential informant in its investigation of petitioner. For reasons already stated, petitioner could not have prevailed on this issue at trial or on appeal, and thus, he was not prejudiced by his attorney's omission of this argument.

### d. Failure to Provide Plea Agreement Options

Petitioner claims that Ginsburg was ineffective, because he failed to procure a more favorable plea agreement. First, petitioner argues that Ginsburg falsely informed petitioner that a binding plea agreement was not available. However, as discussed above, a plea agreement between the defendant and government is never binding on the Court. *See* Fed. R.Crim.P. 11. The Court has the discretion to accept or deny a proposal by the parties. *See* Fed.R.Crim.P. 11(e). Therefore, Ginsburg's advice was not unreasonable.

Next, petitioner attacks his attorney's failure to advise him about an "Alford Plea." In *North Carolina v. Alford,* the Supreme Court found no constitutional defect in a guilty plea where the defendant made a voluntary and intelligent choice to plead guilty but expressly maintained his innocence of the charged offense. 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

■■■ While an "Alford Plea" is not constitutionally defective, neither is it constitutionally mandated. *See Alford,* 400 U.S. at 38 n. 11, 91 S.Ct. at 168. The Federal Rules of Criminal Procedure do not provide for the use of an "Alford Plea." *See* Fed.R.Crim.P. 11. In fact, Rule 11 of the Federal Rules of Criminal Procedure explains that a federal court "should not enter a judgment upon [a plea of guilty] without making such inquiry as shall satisfy it that there is a factual basis for the plea." Without a clear admission of guilt, the Court cannot find a satisfactory factual basis for petitioner's plea. Consequently, petitioner was not prejudiced by his attorney's failure to advise him about *North Carolina v. Alford.*

■■■ Petitioner also argues that his attorney failed to acquire a stipulation that petitioner should receive a two point downward departure pursuant to U.S.S.G. § 3B1.2 based on his allegedly minor role in the drug smuggling conspiracy. Ginsburg was not ineffective with regard to this issue. He could not obtain such a stipulation, because the government was not willing to concede this point. Furthermore, Ginsburg zealously argued for this departure before the Court during sentencing as well as bringing this issue on appeal.

### e. Failure to Argue Jurisdiction

Petitioner argues that his attorney should have challenged jurisdiction. In support of his claim, petitioner explains that the illegal drugs were retrieved from a ship that stopped in Savannah, Georgia before reaching port in New Jersey.

Petitioner was arrested in New Jersey for violating a federal statute in New Jersey. Venue was clearly proper, *see* Fed. R.Crim.P. 18, and the United States District Court for the District of New Jersey had jurisdiction. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Petitioner provides no basis to question jurisdiction. (*See* Petition at 9). Therefore, Ginsburg was not ineffective for his failure to challenge jurisdiction.

### f. Failure to Argue Chain of Custody

■■■ Petitioner's next ineffective assistance claim is based on Ginsburg's failure

to challenge the chain of custody of the seized drugs. He writes, "It was never shown or proven that the cargo ... was not either handled or tampered with in the Port of Savannah." (Petition at 9).

Petitioner offers no reason to question the chain of custody after federal agents seized the cargo of cocaine in New Jersey. In fact, petitioner's description of the cargo provided to the probation officer during the presentence investigation is consistent with the government's charges and the parties' stipulations. In addition, petitioner's plea agreement precluded any challenge to evidence the government may have used during trial. Thus, the Court finds that petitioner's attorney provided effective assistance with regard to this issue.

### g. Failure to Contest the Court–Imposed Fine

Petitioner's next ineffective assistance argument concerns the fine assessed by the Court. Ginsburg's failure to argue the fine did not prejudice petitioner's defense. In the presentence report, the probation officer provides a detailed outline of petitioner's financial situation. (*See* Government Exhibit D). The probation officer conceded that petitioner would have difficulty paying a fine and appropriately recommended participation in the Bureau of Prisons Inmate Financial Responsibility Program. (*See Id.*). In addition to this report, the Court considered petitioner's own words during the sentencing hearing. (*See* Government Exhibit E). Using this information, the Court imposed a $3000 fine with the option to pay through the aforementioned program. Any further argument by counsel on this issue would have had no effect on petitioner's sentence.

### h. Failure to Argue for a Downward Departure for Rehabilitation Efforts

Petitioner requests a downward departure based on his post-conviction rehabilitation efforts. While petitioner does not claim in connection with this issue that the Court's sentence was "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," 28 U.S.C. § 2255, petitioner does argue that his counsel was ineffective for failing to raise this issue. On this basis, the Court will review petitioner's application for a downward departure.

The Third Circuit recognized, in *United States v. Sally*, 116 F.3d 76, 82 (3d Cir. 1997), that "the district court has the authority to depart downward based on extraordinary or exceptional post-conviction rehabilitation efforts." The *Sally* Court relied, in part, on section 5K2.0 of the Sentencing Guidelines, allowing a sentence to deviate from the applicable guideline range where a "characteristic or circumstance is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines." U.S.S.G. § 5K2.0. In order to receive relief, the Third Circuit stressed that the defendant's efforts must be "remarkable and indicate real, positive behavioral change," *Sally*, 116 F.3d at 81, and recognized that cases that satisfy these conditions "will be extremely rare." *Id.* at 79 (quoting U.S.S.G. § 5K2.0, comment).

In *United States v. Jaramillo*, the defendant's Progress Report explained that he "completed three classes which are part of the Adult Continuing Education Program, he has continuously received outstanding work reports from his detail supervisor, he is not considered a management problem and he has maintained a clear conduct record during his period of confinement." 4 F.Supp.2d 341, 351 (D.N.J.1998). In addition, Jaramillo "tutored other Spanish-speaking inmates in their reading, writing and General Education Development ('GED') test preparation." *Id.* Although the *Jaramillo* Court commended the defendant for his efforts,

it declined to deem these efforts sufficiently exceptional to warrant a downward departure. *See id.* at 352.

■ In the case at bar, petitioner presents a record similar to that of Jaramillo. He has successfully completed 320 hours of educational courses, and his work performance has been outstanding, as evaluated by his supervisor. Contrasting negatively with Jaramillo, however, petitioner was subject to disciplinary action on one occasion. Petitioner was found in possession of unauthorized money and thereafter attempted to bribe the correction officer to clear his record.

The Court considers much of petitioner's conduct to be as expected for any prisoner in his situation. The Court is unwilling to grant any special credit, beyond that awarded under the good-time credit program for early release, for behavior that merely conforms to the rules of the institution. The Court also recognizes that a *Sally* downward departure normally occurs before sentencing. *See Sally,* 116 F.3d at 79; *see also Johnson v. United States,* No. Civ.A.98–CV–2941, 1998 WL 964200, at *2 (E.D.Pa. Nov.3, 1998). Even if the Court were to extend *Sally* to post-sentencing relief, petitioner's efforts have not been sufficiently extraordinary, falling outside the "heartland" of cases, thereby compelling relief. Therefore, any supposed error by counsel in not requesting a downward departure on this ground cannot have prejudiced petitioner, as required by *Strickland.*

### 4. Breach of Contract

Petitioner argues that the government breached the plea agreement. This claim is completely unfounded.

The government promised to "move the sentencing judge, pursuant to section 5K1.1 of the Sentencing Guidelines, to depart from the otherwise applicable guideline range," if petitioner provided "substantial assistance in the investigation or prosecution of one or more persons who have committed offenses." (*See* Government Exhibit B). This application was made and accepted by the Court. (*See* Government Exhibit E). In addition, while not required to do so, the government objected to the probation officer's factual determination regarding the applicable drug amount for sentencing purposes.

Petitioner finds fault with the government for its failure to argue for a downward departure, given petitioner's allegedly minor role, pursuant to U.S.S.G. § 3B1.2. However, the government never stipulated to this fact (*see* Government Exhibit B), and the petitioner admitted at the plea colloquy that the government made no promises not contained within the plea agreement. (*See* Government Exhibit C).

■ Petitioner also claims a breach of the plea agreement based on the fact that the Court did not adopt the parties' stipulations and predictions with regard to the relevant drug quantity, petitioner's criminal history category, and the appropriate sentencing guideline range. However, petitioner was duly informed by the Court that any prediction or stipulation written in the plea agreement or orally conveyed to petitioner was not binding on the Court and was subject to revision following the presentence report. (*See* Government Exhibit C); *see also* Fed.R.Crim.P. 11(e); U.S.S.G. § 6B1.4(d).

During the plea agreement colloquy, the Court asked, "Mr. [petitioner], you understand that, until the presentence report is completed, it's impossible for either the Court or your lawyer to know precisely what sentence range will be prescribed by the guidelines?" (Government Exhibit C). Petitioner replied that he understood. The Court also explained to petitioner that "[t]he Government is not making any representation to [him] as to what level offense will ultimately be determined or what [his] criminal history category is." (*id.*). Petitioner stated that he understood this as well. Finally, the plea agreement, signed by petitioner, warns, "[t]he sen-

tence to be imposed upon [petitioner] is within the sole discretion of the sentencing judge." (*id.*).

In short, petitioner was thoroughly advised of his rights under the plea agreement, and the government fulfilled its obligations therein. Accordingly, petitioner's argument is without merit.

### CONCLUSION

For the reasons set forth above, petitioner's application for relief will be denied with prejudice.

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 23d day of August, 2000

ORDERED that petitioner's application for a writ of habeas corpus is denied with prejudice.