**Darry JACKSON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. Crim. 95–50029.**

United States District Court, E.D. Michigan, Southern Division.

Dec. 20, 2000.

Order on Reconsideration Feb. 21, 2001.

1054

Arthur J. Weiss, Farmington Hills, MI, Arthur A. Weiss, Jaffe, Raitt, Detroit, MI, William A. Siebert, Gladwin, MI, for Petitioner.

Mark C. Jones, U.S. Attorney's Office, Flint, MI, for Respondent.

## *ORDER*

GADOLA, District Judge.

Before the Court are Petitioner's motions to (a) amend his petition pursuant to 28 U.S.C. § 2255 (docket entry 150) and (b) vacate his sentence pursuant to 28 U.S.C. § 2255 (docket entry 123). Pursuant to Local Rule 7.1(e)(2), this Court has determined that a hearing would not aid in the disposition of these motions. For the reasons stated below, the Court grants Petitioner's motion to amend his petition pursuant to 28 U.S.C. § 2255 and denies Petitioner's motion to vacate his sentence pursuant 28 U.S.C. § 2255.

## I BACKGROUND

On June 19, 1996, a jury convicted Petitioner of conspiracy to distribute cocaine (count I), money laundering (counts II and IV), and making false statements to a federally-insured bank (count III). At sentencing, this Court concluded, by a preponderance of the evidence, that Petitioner was accountable for the distribution of over 150 kilograms of powder cocaine (docket entry 102, Tr. 26:5–9) and sentenced him to 360 months' imprisonment for that count (docket entry 102, Tr. 28:1). The Court also sentenced Petitioner to 240 months' imprisonment for each of the other counts, but Petitioner had to serve those terms concurrently (docket entry 102, Tr. 28: 2–11). The Court also sentenced Petitioner to ten years of supervised release for count I, and three years of supervised release for each remaining count (docket entry 102, Tr. 28: 22–25). Petitioner must serve these terms concurrently as well.

Petitioner unsuccessfully appealed his sentence to the United States Court of Appeals for the Sixth Circuit (docket entry 116). On January 12, 2000, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that he suffered ineffective assistance of counsel both at trial and on appeal (docket entry 123).

On June 26, 2000, the United States Supreme Court decided *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that, except for the fact of a previous conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63.

On September 14, 2000, Petitioner filed a motion to amend his petition to include arguments predicated upon the Supreme Court's decision in *Apprendi* (docket entry 150).

## II MOTION TO AMEND

A party may amend his § 2255 petition twenty days after service "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a); *Doe v. United States*, 112 F.Supp.2d 398, 401 (D.N.J. 2000). Here, the Government is the adverse party, and it does not consent to Petitioner's motion. Whether Petitioner may amend his petition thus hinges on whether the Court will grant him leave to do so.

■ The Court must grant leave to amend freely when justice requires. *See Piner v. United States*, No. 97–1304, 1999 WL 454708, at *1 (6th Cir. June 21, 1999). The Court would, however, deny the motion if: (1) Petitioner brought his proposed amendment in bad faith or for dilatory reasons; (2) granting the motion would cause undue delay or prejudice to the Government; or (3) granting the motion would be futile. *See id.* As there is no evidence that either of the first two elements exists here, the Court considers the third, futility.

■ The Court will deny as futile a motion to amend where the statute of limitations bars the amended claims. *See Willits v. Peabody Coal Co.*, No. 98–5458, 1999 WL 701916, at *19 (6th Cir. Sept. 1, 1999); *Doe*, 112 F.Supp.2d at 402. In most cases, a petition made pursuant to § 2255 is subject to a one year statute-of-limitations accruing on the date that the judgment of conviction becomes final. *See id.* Here, Petitioner's motion to amend exceeds this time period.

■ This case may fall, however, under an exception to the typical case. That exception dictates that a petitioner's claim under § 2255 is not time barred if he files it within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C.A. § 2255 (West 2000). Petitioner filed his claim within one year of the *Apprendi* decision. The question thus becomes: has the newly-recognized right of *Apprendi* been "made retroactively applicable to cases on collateral review"? On this point, the Court has found no binding authority.

The Court begins with the observation that the wording of § 2255 is a classic example of the perils surrounding use of the passive voice. *See generally* William Strunk Jr. & E.B. White, *The Elements of Style* 18 (4th ed.2000). To wit, Congress did not specify exactly what court must make a newly-recognized right "retroactively applicable to cases on collateral review." *See United States v. Valdez*, 195 F.3d 544, 548 n. 7 (9th Cir.1999); *United States v. Lloyd*, 188 F.3d 184, 187 (3d Cir.1999). The Court must therefore decide whether Congress intended that the Supreme Court must be the entity that declares a newly-recognized right retroactively applicable on collateral review, or if it intended that a lower court may perform the same function.

■ This question is dispositive because the Supreme Court has not declared the right created by *Apprendi* to apply retroactively to cases on collateral review. *See, e.g., In re: Joshua*, 224 F.3d 1281, 1283 (11th Cir.2000). At least one lower court, on the other hand, has concluded that *Apprendi* applies retroactively to collateral attacks. *See Doe*, 112 F.Supp.2d at 402 (granting a motion to amend a § 2255 petition to include arguments based on *Apprendi* ). In short, if this Court were to conclude that the Supreme Court must pronounce the retroactivity of *Apprendi*, Petitioner's motion to amend would be time barred; if it were to conclude that a lower court's pronouncement would suffice to perform the same purpose, Petitioner's motion would be timely. For the following three reasons, this Court holds that a lower court's holding that a newly-recognized right applies retroactively for purposes of collateral review suffices to make that right retroactively applicable to a party's first petition under § 2255.

First, the Court turns to the construction of the statute. Section 2255 is a prod-

uct of the Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA"). The text of § 2255 shows that, when Congress desires to make the Supreme Court the sole entity that can make a new rule of constitutional law retroactive to cases on collateral review, it does so unambiguously. Several paragraphs below the statutory provision dealing with initial petitions under § 2255, Congress constructed the provision dealing with successive or second petitions under ADEPA. That provision reads as follows:

> [a] second or successive motion [under § 2255] must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain ... a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*, that was previously unavailable. 28 U.S.C.A. § 2255 (emphasis added).

In the provision of § 2255 at bar—a provision that Congress passed at the same time and placed in physical proximity to the above-quoted passage—Congress chose not to specify the Supreme Court as the sole court capable of declaring a newly-recognized right retroactive. Instead, it wrote that

> [a] 1–year statute of limitation shall apply to a motion under [§ 2255]. The limitation period shall run from the latest of ... the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court *and made retroactively applicable to cases on collateral review.* 28 U.S.C.A. § 2255 (emphasis added).

The juxtaposition of these provisions shows that: (1) Congress knew how to make the Supreme Court the sole entity that can make a newly-recognized right retroactive; (2) it chose to do just that in the case of second or successive petitions under § 2255; but (3) it chose not to do so in the case of other motions pursuant to § 2255. *See Bates v. United States*, 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (reasoning that "where Congress includes particular language in one

section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion"); *cf. United States v. Page*, 167 F.3d 325, 329 (6th Cir.1999) (Moore, J., concurring) (accepting the Congress-knew-how-to argument); *United States v. Holmes*, 975 F.2d 275, 283 n. 7 (6th Cir. 1992) (same).

The second reason in support of this Court's conclusion is that the legislative history of ADEPA evinces an intent to broaden the number of courts that can trigger retroactivity. As originally proposed, the part of ADEPA governing federal habeas-review of state death-sentences, § 2264, limited petitions to cases involving "new constitutional rights that have been retroactively applied *by the Supreme Court.*" Orrin Hatch, *Section by Section Analysis of Comprehensive Terrorism Prevention Act 1995*, Gov't Press Releases, April 28, 1995, *available in* 1995 WL 14248293 (emphasis added). Section 2264 was the subject of great controversy within the Senate. *See* Tom Diemer, *Terrorism Bill Debate Reflects Conflicting Agendas*, Plain Dealer (Cleveland), June 4, 1995 at 4A, *available in* 1995 WL 7113227.

A last-minute amendment to ADEPA, however, moderated the effect of ADEPA as originally proposed by striking the words "right made retroactively applicable to cases on collateral review *by the Supreme Court*" and inserting "right that is made retroactively applicable." 141 ConGRec. S7924–01, at *S7925 (1995), *available in* 1995 WL 338035 (emphasis added). The Senate adopted this amendment by voice vote, *see Bill Tracking Report* S. 735 at *11 (LEXIS–NEXIS 1996), and Congress eventually included this precise language in the statute. 28 U.S.C.A. § 2264(a)(2). This Court knows of no legislative history as to the reasoning behind this particular change. It is probable, however, that the Senate passed such an amendment to effect a compromise that would ameliorate the arguably-harsh im-

pact of this section of ADEPA by broadening the number of courts that could declare a right retroactive. In this context, eliminating the words "by the Supreme Court" would otherwise make no sense.

The operative language of § 2255, "made retroactively applicable to cases on collateral review," is almost identical to the wording Congress chose to include in § 2264. Considering the rationale underlying the latter wording of ADEPA, this Court concludes that Congress used the passive voice in § 2255 for the same reason it used the passive voice in § 2264: because it did not want the Supreme Court to be the only court that could declare a right retroactively applicable under the section.

A third reason underlying this Court's holding is that, by applying a statute-of-limitations to petitions under § 2255, ADEPA was in derogation of the long-standing principle that a motion for relief pursuant to § 2255 "may be made at any time." 28 U.S.C.S. § 2255 (Law.Co-op.1990) (repealed 1996). Because of the "presumption against an intent to change existing law," *Johnson v. Southern Pacific Co.*, 196 U.S. 1, 17, 25 S.Ct. 158, 49 L.Ed. 363 (1904), the Court construes any ambiguity in the language of § 2255 in favor of the law as it existed before ADEPA. Specifically, this Court will find a petitioner barred by ADEPA's statute of limitations only when the statute makes clear that Congress intended such a result. In ambiguous situations, such as this one, the maxim that statutes in derogation of existing law must be narrowly construed militates toward allowing a petitioner's motion to proceed.

For these three reasons, the Court holds that a lower court's holding that a newly-recognized right applies retroactively for purposes of collateral review suffices to make that right retroactively applicable to a party's first petition under § 2255. As mentioned above, at least one district court has held that *Apprendi* applies retroactively for purposes of collateral review. The Court therefore grants Petitioner's motion to amend his petition to include arguments pertaining to *Apprendi*, and will address the substance of those arguments.[1]

## III SUBSTANTIVE ARGUMENTS

### A The impact of *Apprendi* on Petitioner's sentence.

Petitioner argues, in essence, that this Court must reverse his conviction of violating 21 U.S.C. §§ 841, 846 (count I) because: (1) under *Apprendi*, drug amount and type are essential elements of an offense; (2) the jury never found beyond a reasonable doubt that Petitioner possessed any specific quantity or type of narcotics because the indictment never alleged those elements; and (3) his indictment was therefore constitutionally defective (docket entry 150, Pet'r Br. at 5–16).

The holding of *Apprendi* is that, except for the fact of a previous conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. Aug.24, 2000) (quoting *Apprendi*, 120 S.Ct. at 2362–63).

The chief problem with Petitioner's argument is that the indictment submitted to the jury alleges that he "organized the distribution of hundreds of kilograms of cocaine" (docket entries 29, 61; superseding indictment at 1), and the trial judge orally submitted to the jury that Petitioner "organized the distribution of hundreds of kilograms of cocaine," (docket entry 91, Tr.

---

1. The Court is ruefully aware that, as Justice O'Connor forecast in her dissent in *Apprendi*, federal courts may now face a "flood of petitions by convicted defendants seeking to invalidate their sentences in whole or in part on the authority of" *Apprendi*. *Apprendi*, 120 S.Ct. at 2395 (O'Connor, J., dissenting). But the Court cannot help this situation because the Court's function is to interpret a statute as Congress intended it to be, and not as the Court might prefer it to be. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). To the extent that the statute is ailing, Congress possesses the sole remedy.

at 18:8–9). Thus, the elements of type and quantity were submitted to the jury in this case, and the jury found these elements beyond a reasonable doubt. There is no violation of the *Apprendi* doctrine in this case.

■ Petitioner argues that submitting to the jury that he was indicted for trafficking in "hundreds of kilograms of cocaine" was too ambiguous to meet the standard of *Apprendi*. (docket entry 150, Pet'r Br. at 14.) But this is not so. Anyone held to have possessed more than five kilograms of cocaine has placed himself within the highest statutory range of penalties for narcotics trafficking, § 841(b)(1)(A). *See United States v. Polk,* No. 96–1492, 1999 WL 397922, at *10 (6th Cir. June 2, 1999); *United States v. Gaines,* 122 F.3d 324, 326 n. 3 (6th Cir. 1997). It follows that Petitioner, whom a jury found to have distributed "hundreds of kilograms of cocaine," and whom the Court then sentenced within the limits of § 841(b)(1)(A), has not shown that a "fact that increases the penalty for a crime beyond the prescribed statutory maximum" was not "submitted to a jury, and proved beyond a reasonable doubt." That is, Petitioner has not established a violation of *Apprendi* on these facts.

That the sentencing judge later concluded, by a preponderance of the evidence, that Petitioner was accountable for the distribution of over 150 kilograms of powder cocaine is irrelevant. *Apprendi* arguably requires that a jury find beyond a reasonable doubt that Petitioner possessed the requisite type and amount of narcotics. That happened in this case. At worst, the Court's conclusion during sentencing was a superfluous, but harmless, observation of a fact that the jury had already established beyond a reasonable doubt.

For the reasons delineated above, the Court holds that Petitioner's sentence as to count I did not violate the *Apprendi* doctrine, and therefore refuses to vacate,

set aside, or correct his sentence on that ground.

■ An alternate reason for this Court's holding is that, even if the jury had not found beyond a reasonable doubt that Petitioner possessed a certain quantity or type of narcotics, § 841 delineates one offense: narcotics trafficking. The jury found Petitioner guilty of that offense beyond a reasonable doubt. Drug type and quantity are mere sentencing factors for that crime that a judge may determine by a preponderance of the evidence at sentencing. Provided that the sentencing judge does not exceed the penalty provisions of § 841(b) for narcotics trafficking, he has not found a fact that "increases the penalty for a crime beyond the prescribed statutory maximum," and thus has not run afoul of *Apprendi*. *See Doe,* 112 F.Supp.2d at 403; *United States v. Kelly,* 105 F.Supp.2d 1107, 1114 (S.D.Cal.2000); *cf. United States v. Munoz,* No. 99–5652, 2000 WL 1738693, at *3 (6th Cir. Nov. 27, 2000) (reasoning that a sentencing judge's determination of drug type by a preponderance of the evidence does not implicate *Apprendi* if the resulting sentence does not exceed the statutory maximum).

In this jurisdiction, authority seems to be split as to how district courts must apply *Apprendi*. One panel of the Sixth Circuit applied *Apprendi* to other aspects of 21 U.S.C. § 841 in *United States v. Rebmann,* 226 F.3d 521 (6th Cir.2000).[2]

The defendant in *Rebmann* had pleaded guilty to distributing heroin in violation of § 841(a)(1). *See id.* at 522. She did so with the understanding that her maximum term of incarceration would be twenty years for distribution, but that she could serve twenty years to life if the sentencing judge concluded, by a preponderance of the evidence, that a death had resulted from the distribution. *See id.* At sentencing, the judge determined that Rebmann's distribution had, indeed, caused a death.

**2.** For reasons discussed *infra,* the rationale underlying *Rebmann* is irreconcilable with the Sixth Circuit's ruling in *United States v.*

*Corrado,* 227 F.3d 528 (6th Cir.2000). Because of that, this Court must choose between the two approaches.

He sentenced the defendant, accordingly, to twenty-four years and four months' confinement pursuant to 21 U.S.C. § 841(b)(1)(C).

Rebmann appealed on the ground that the sentencing judge should have decided whether death resulted beyond a reasonable doubt, and not merely by a preponderance of the evidence. The panel agreed, remanding to the district court for sentencing under a beyond-a-reasonable-doubt standard.[3] *See Rebmann*, 226 F.3d at 525.

The crux of the Circuit Court's reasoning was that "[b]ecause the provisions at issue are factual determinations and because they increase the maximum penalty to which Rebmann was exposed ... they are elements of the offense which must be proven beyond a reasonable doubt." *Id.* at 524–25. The district court, in other words, had run afoul of *Apprendi*.

Although the point is not crystal clear, the *Rebmann* panel must have implicitly concluded that, as another opinion has made plain, " § 841 sets forth separate offenses, rather than one offense with separate penalties." *United States v. Henderson*, 105 F.Supp.2d 523, 534 (S.D.W.Va.2000). This is so because the Sixth Circuit effectively treated distribution of heroin as one crime, and distribution of heroin that causes a death as a separate crime. Because Rebmann had only pleaded guilty to the former, the Sixth Circuit reasoned, she could be sentenced to no more than the maximum penalty for plain distribution: twenty years' incarceration.

What is particularly striking about *Rebmann* is that both functionally-separate offenses are contained within § 841(b)(1)(C). In fact, they are contained within the same sentence:

> In the case of a controlled substance in Schedule I ... [a defendant] shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced

to a term of imprisonment of not less than 20 years or more than life. 21 U.S.C.A. § 841(b)(1)(C).

Accepting the principle that " § 841 sets forth separate offenses, rather than one offense with separate penalties," the inescapable conclusion is that a defendant who is convicted of drug distribution under § 841, but whose indictment does not specify the amount of drugs allegedly involved, must be sentenced to a punishment within the lowest statutory range. This is so because a greater punishment under § 841 would effectively be a penalty for a separate offense, for which a defendant could be sentenced only after a jury found him guilty beyond a reasonable doubt of all the requisite elements. In addition to the *Rebmann* panel, another panel of the Sixth Circuit also seems to have adopted this approach to *Apprendi*. *See United States v. Page*, 232 F.3d 536 (6th Cir.2000) (relying heavily on *Rebmann* ).

But the better approach to *Apprendi* is exemplified by the *Kelly* decision. In that case, the district court applied the holding of *Apprendi* as it was later enunciated by the *Corrado* panel and held that § 841 delineates one crime that contains separate penalties. *See Kelly*, 105 F.Supp.2d at 1114. The district court first relied upon *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000). The Supreme Court decided *Castillo* three weeks before *Apprendi*. At issue was whether, under a federal firearms-statute (18 U.S.C. § 924(c)(1)), Congress intended to create one offense with sentencing factors for a judge to apply, or separate offenses with different elements, each of which a jury must find beyond a reasonable doubt. *See Castillo*, 120 S.Ct. at 2092. What the district court found critical was that the *Castillo* Court decided the issue based solely on congressional intent, and "without reference to the constitutional limitation" of the *Apprendi* doctrine. *Kelly* 105 F.Supp.2d at 1114. The district court then compared the statute at issue in

---

3. The defendant had already waived her right    to a jury trial.

*Castillo* with § 841 and concluded that the two were structurally similar:

> Like § 841, the statute in *Castillo* prescribes enhanced mandatory penalties based on a change in the characteristics of an element of the crime. In *Castillo,* the crime is possession of a firearm and the enhancement depends on the type of firearm. The crime in § 841 is possession of a controlled substance and the enhanced penalty depends on the type and quantity of the controlled substance. The issue with respect to these statutes is different than the narrow issue presented in *Apprendi,* in which a maximum penalty associated with the underlying offense charged in the indictment is enhanced at sentencing by reference to a fact unrelated to that offense as defined. Cf. Susan N. Herman, *The Tail that Wagged the Dog: Bifurcated Fact–Finding Under the Federal Sentencing Guidelines and the Limits of Dues Process,* 66 S.Cal.L.Rev. 289, 310 (1992) (distinguishing between sentencing based on uncharged conduct and offense-related conduct).
>
> *Id.*

Given the similarity between the law discussed in *Castillo* and § 841, the *Kelly* court concluded that the constitutional doctrine of *Apprendi* also did not apply to § 841. It therefore assessed whether Congress intended trafficking under § 841 to comprise one offense with separate elements. Because of congressional silence in the face of long-standing and unanimous Circuit Court precedent to the effect that drug type and quantity were sentencing factors for one crime under § 841, the district court concluded that Congress intended trafficking under § 841 to comprise one crime. *See id.* at 1115. *Apprendi,* under this view, therefore is inapplicable to § 841. In *Munoz,* a panel of the Sixth Circuit adopted a similar reading of *Apprendi. See Munoz,* 233 F.3d 410, 413 (relying upon *Corrado* ).

For the following reasons, this Court concludes that § 841 contains one crime, narcotics trafficking, with a prescribed range of sentences. After a jury convicts a defendant of drug trafficking under § 841, any sentence within the prescribed range of § 841(b), even if predicated upon a sentencing judge's finding quantity and type by a preponderance of the evidence, does not violate *Apprendi.*

■ This is so because the *Rebmann* panel's assessment of *Apprendi*'s holding is imprecise. In *Rebmann,* the panel stated that the *Apprendi* "Court held under its prior decision in *Jones,* that 'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Rebmann,* 226 F.3d at 524 (citing *Apprendi,* 120 S.Ct. at 2355) (quoting *Jones v. United States,* 526 U.S. 227, 243, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

With all respect to the *Rebmann* panel, neither *Apprendi* nor *Jones* stands for the broad principle that any fact increasing the maximum penalty to which a defendant is sentenced, other than that of a prior conviction, is an issue for the jury. In *Corrado* another panel of the Sixth Circuit had made clear that the holding of *Apprendi* is more narrow: except for the fact of a previous conviction, "any fact that increased the penalty for a crime beyond the prescribed *statutory* maximum must be submitted to a jury, and proved beyond a reasonable doubt." *See Corrado,* 227 F.3d at 542 (quoting *Apprendi,* 120 S.Ct. at 2362–63) (emphasis added). The word "statutory" makes all the difference.

The continuing vitality of *Castillo* illustrates the difference between the *Rebmann* and *Corrado* courts' statement of the *Apprendi* doctrine. If the rule as enunciated in *Rebmann* were correct, the Supreme Court's rationale in *Castillo* already would be invalid. This is so because the statute at bar in *Castillo* allowed the judge to determine the existence of a fact—what type of firearm the defendant

used in committing a crime—that increased the maximum penalty for a crime. The Supreme Court nonetheless would have upheld that statute had it determined that Congress intended to define one crime with graduated penalty-provisions. *See Castillo*, 120 S.Ct. at 2092 (reasoning that if "Congress intended the statutory references to . . . simply authorize an enhanced penalty . . . the matter need not be tried before a jury but may be left for the sentencing judge to decide").

This is a result that would be constitutionally impossible under a rule requiring that "any fact (other than prior conviction) that increases the *maximum penalty* for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Rebmann*, 226 F.3d at 524 (emphasis added). But the same result would be eminently possible under a rule requiring that, except for the fact of a previous conviction, "any fact that increased the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *See Corrado*, 227 F.3d 528, 542 (emphasis added). In other words, had Congress intended the statute at bar in *Castillo* to operate differently, the Supreme Court would have upheld a law allowing a judge to decide, by a preponderance of the evidence, a fact that would increase the maximum penalty for a crime charged, but that would still limit a sentencing court to a statutorily-prescribed maximum range of penalties. Unless the Supreme Court intended to overrule the rationale underlying *Castillo* three weeks after it wrote that opinion, the *Corrado* and *Munoz* panels, and not the *Rebmann* and *Page* panels, must have enunciated the correct holding of *Apprendi.*

Regarding *Jones,* the Supreme Court has stated that although it had "expressed serious doubt concerning the constitutionality of allowing penalty-enhancing findings to be determined by a judge by a preponderance of the evidence . . . those doubts were not essential to our holding." *Apprendi,* 120 S.Ct. at 2353.

The *Rebmann* and *Page* opinions are, therefore, predicated on an overly-expansive concept of the holdings of both *Apprendi* and *Jones.* The Sixth Circuit in *Corrado* and *Munoz,* and the district court in *Kelly,* employed the correct, more narrow, holding that the *Apprendi* Court actually enunciated. That analysis of this precise issue is better, and this Court follows that approach.

In short, this Court rejects Petitioner's arguments under *Apprendi* for two reasons. First, the jury actually found that he possessed the requisite type and quantity of narcotics beyond a reasonable doubt. Second, even if that were not so, the sentencing judge may properly determine, by a preponderance of the evidence, quantity and amount under § 841.

## B Ineffective assistance of trial counsel.

To succeed on a claim of ineffective assistance of counsel, Petitioner must demonstrate (1) that counsel's performance was deficient, and (2) that counsel's performance prejudiced the defense; i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "strong presumption" exists that counsel afforded a defendant reasonable professional assistance. *See id.* at 689, 104 S.Ct. 2052. The prejudice prong is especially onerous because Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *See id.* at 694, 104 S.Ct. 2052.

Petitioner alleges six grounds upon which he bases his claim of ineffective assistance by his trial counsel. He cites counsel's alleged: (1) failure to inform Petitioner of an offered plea agreement: (2) failure to investigate properly the false-statement claim and request a jury instruction on Petitioner's theory of defense; (3) failure to investigate and impeach Gov-

ernment witness Edward Osborne; (4) failure to request a limiting instruction relating to Rule 404(b) evidence; (5) failure to object or contest drug quantity at sentencing; and (6) failure to object to the jury-selection process.

■■■ The Court begins by observing that, as general rule, a petitioner may not seek relief via a habeas petition for any claims that he failed to raise on direct appeal to the Sixth Circuit unless he establishes that cause for, and prejudice from, his failure to raise that claim exist. *See United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). The Court also notes that this rule usually does not apply to claims of ineffective assistance of counsel. *See United States v. August*, 984 F.2d 705, 711 (6th Cir.1992). The rationale underlying the exception to the rule is that petitioners usually have not had time to develop and include in the record evidence relevant to the merits of their ineffective-assistance claims, *see id.*, and that, when appellate and trial counsel are the same person, it is unrealistic to expect that lawyer to assert his own ineffectiveness. *See Slevin v. United States*, 71 F.Supp.2d 348, 360 n. 10 (S.D.N.Y. 1999).

■■■ In this case, however, appellate and trial counsel were different people, and the Court's examination of the record reveals that Petitioner relies on matters well-developed in the record before his direct appeal. The Court thus concludes that this situation falls within a narrow category of cases in which a claim of ineffective assistance must be brought on direct appeal or not at all. The Court reaches this conclusion because it agrees with Judge Richard Posner and the Seventh Circuit Court of Appeals that "if a defen-

dant postpones raising the issue of ineffective assistance of counsel until the collateral stage he must have a valid reason for the postponement." *Guinan v. United States*, 6 F.3d 468, 472 (7th Cir.1993); *see also Billy–Eko v. United States*, 8 F.3d 111, 115 (2d Cir.1993) (holding that a defendant must raise an ineffective assistance claim on direct appeal when (1) he had new counsel on appeal and (2) his claim is based solely on the trial record). Because Petitioner had new counsel and a well-developed trial record relevant to his ineffective-assistance claims before his direct appeal, he has failed to adduce a valid reason for postponing his argument that trial counsel's assistance was ineffective. The Court will therefore not consider Petitioner's arguments that he did not bring on direct appeal unless he shows cause and prejudice.

A review of Petitioner's appeal reveals that he raised none of the ineffective-assistance issues delineated in his petition on appeal.[4] To meet the cause standard, Petitioner must establish that "some objective factor external to the defense impeded [Petitioner's] efforts" to raise the claim earlier. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (citation omitted).

Petitioner has failed to establish cause. He has adduced no evidence, in other words, showing that some "objective factor external to the defense impeded" his efforts to bring ineffective-assistance claims on appeal. Because Petitioner has not shown the element of cause, the Court will not entertain the argument that his trial counsel provided ineffective assistance.

---

4. On appeal, Petitioner claimed that: (1) the evidence presented to the jury could not support a finding of guilt on count I; (2) this Court erred by not holding an evidentiary hearing regarding the jury's prejudice against Petitioner; (3) this Court improperly included in its calculation of his criminal history a prior state conviction for possession of crack cocaine; (4) this Court improperly applied the sentencing guidelines regarding possession of a firearm; and (5) this Court improperly based its conclusion that Petitioner trafficked in more than 150 kilograms of cocaine on the presentence report and unreliable testimony. *See United States v. Jackson*, 166 F.3d 1215 (6th Cir.1998). He raised no ineffective-assistance claim.

## C Ineffective assistance of appellate counsel.

Petitioner alleges that he received ineffective assistance of counsel on appeal because appellate counsel: (1) failed to challenge the Court's evidentiary ruling on Rule 404(b) and failed to challenge the Court's failure to give "an immediate limiting instruction to the jury on said evidence"; and (2) "failed to raise Brady/Kyles/Napue/Giglio violations" (docket entry 123, Pet'r Mot. at 4).

■ The element of prejudice, as discussed above, requires Petitioner to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. That element does not exist regarding appellate counsel's failure to challenge this Court's evidentiary ruling on Rule 404(b) evidence. The crux of Petitioner's argument is that his appellate counsel was deficient for not challenging the Government's alleged reneging on its stipulation not to bring "out the fact that petitioner had a prior drug conviction and introduce[ ] evidence of other crimes and bad acts" (docket entry 123, Pet'r Br. at 13). In support of his position, Petitioner cites to pages 27 through 35 (docket entry 92) of the trial transcript. An examination of those pages, however, reveals that the Government never actually introduced evidence of Petitioner's conviction for a previous drug offense or any other crime. (docket entry 92, Tr. at 26–35.)

The Government admits that it introduced evidence of Petitioner's arrest for possessing crack cocaine, while possessing large sums of cash, as evidence of the conspiracy Petitioner stands convicted of participating in. Use of evidence such as this is, as a matter of law, permissible for the reasons put forth by the Government. *See United States v. Okayfor*, 996 F.2d 116, 120 (6th Cir.1993). It follows that any challenge to the use of this evidence by Petitioner's appellate counsel would have been futile. Petitioner thus has failed to establish that his counsel's decision not to advance such an argument prejudiced him.

■ Regarding appellate counsel's failure to "raise Brady/Kyles/Napue/Giglio violations," Petitioner argues that his "appellate counsel was ineffective in failing to raise the question as to whether the government's 'key' witness, Edward Osborne, (with the government's knowledge) testified falsely at petitioner's trial as to his drug involvement with petitioner, and whether the government's failure to correct this false testimony affected the judgment of the jury, in violation of petitioner's due process right to a fair trial" (docket entry 123, Pet'r Br. at 19). The specific testimony to which Petitioner avers Mr. Osborne testified falsely was the latter's assertion that he, Mr. Osborne, was involved in drug activities with Petitioner after 1991 (docket entry 123, Pet'r Br. at 19–21). Petitioner avers that the Government knew that such testimony was false because of a 1993 plea agreement in which Mr. Osborne pled guilty to a count of conspiracy to distribute cocaine that ended in January, 1991 (docket entry 123, Pet'r Ex. E, F).

Petitioner's argument is sophistry. Mr. Osborne's having pled guilty in 1993 to a conspiracy that, he stated, ended in 1991 does not prove that the Government knew that Mr. Osborne did not resume cocaine trafficking after 1991 and that Mr. Osborne's testimony as to his illegal activities with Petitioner after that date was thus false. It therefore did not prejudice Petitioner when his appellate lawyer failed to put forth such a contention on appeal.

■ Petitioner also argues that another witness, Donald R. Davis, falsely asserted that he had seen three to four-hundred kilograms of cocaine in Petitioner's home (docket entry 94, Tr. at 83:10–18), that the Government knew this testimony was false, and that Petitioner's appellate counsel provided ineffective assistance by failing to raise this subject on appeal (docket entry 123, Pet'r Br. at 20). To support his position, Petitioner cites Mr. Davis's statement to the Federal Bureau of Investigation. In his statement, Mr. Davis asserted

that he saw Petitioner pull "a black tarp off of approximately 50 kilos of cocaine" (docket entry 123, Pet'r Br. at Ex. H) in Petitioner's basement.

At trial, conversely, Mr. Davis swore that he saw "maybe three, 400, a hundred [kilos] down there [in Petitioner's basement], approximately. May have been that. I don't really know, I really don't" (docket entry 94, Tr. at 83:12–15). Juxtaposing these statements, Petitioner argues that it was obvious that the Government countenanced Mr. Davis's false testimony at trial regarding the quantity of cocaine, and that his appellate counsel was deficient for not raising that argument on appeal.

The problem with Petitioner's contention is twofold. First, Mr. Davis made clear in both statements that his estimates were approximate. Second, Mr. Davis concluded his sworn testimony at trial by stating that he did not know the quantity of cocaine that he witnessed in Petitioner's home. Because a person cannot be lying about how much cocaine he saw when he states that he does not know how much cocaine he observed, the Government could not have tolerated false testimony on these facts. It further follows that Petitioner's appellate counsel could not have prejudiced Petitioner by not arguing as much on appeal.

Petitioner, in short, has failed to adduce evidence from which this Court could conclude that his appellate counsel was constitutionally deficient.

### D Evidentiary hearing.

As a final matter, Petitioner argues that the Court should grant him an evidentiary hearing. The Court will not do so because where, as here, the records and files of a case determinatively establish that a petitioner is not entitled to relief, the law does not require an evidentiary hearing for a motion pursuant to § 2255. *See Stead v. United States*, 67 F.Supp.2d 1064, 1073 (D.S.D.1999).

For the reasons discussed above, this Court denies Petitioner's claims for relief pursuant to 21 U.S.C. § 2255.

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Petitioner's motion to amend his petition pursuant to 28 U.S.C. § 2255 (docket entry 150) is **GRANTED** and that Petitioner's motion to vacate his sentence pursuant 28 U.S.C. 2255 (docket entry 123) is **DENIED.**

**SO ORDERED.**

### ORDER ON RECONSIDERATION

Before the Court is Respondent's motion for reconsideration of this Court's order of December 20, 2000 [docket entry 155]. Pursuant to Local Rule 7.1(e)(2), this Court has determined that a hearing would not aid in the disposition of this motion. For the reasons stated below, the Court denies Respondent's motion.

### I BACKGROUND

On December 20, 2000, this Court granted Petitioner's motion to amend his initial petition pursuant to 28 U.S.C. § 2255 so that he could add arguments pertaining to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See Jackson v. United States*, 2000 WL 1855102, at *1 (E.D.Mich.2000). The Court then considered Petitioner's arguments under *Apprendi* and other cases. Ultimately, the Court denied Petitioner's motion to vacate his sentence. *See id.*

Although the Court denied Petitioner any relief whatsoever, Respondent nonetheless asks the Court to reconsider the rationale underlying its holding. The crux of Respondent's argument is that the Court erred in reasoning that the right recognized in *Apprendi* applies retroactively to initial petitions under § 2255.

### II  LEGAL STANDARD

To succeed on a motion for reconsideration, the moving party must demonstrate a palpable defect upon which the Court and parties have been misled and that a different disposition of the case

will result from a correction thereof. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect that is obvious, clear, unmistakable, manifest or plain. *See* BLACKS LAW DICTIONARY 1110 (6th ed.1990). Motions for reconsideration "which merely present the same issues relied upon by the Court, either expressly or by reasonable implication, [will] not be granted." E.D. Mich. LR 7.1(g)(3).

## III DISCUSSION

■ The Court denies Respondent's motion. The Court does this because, were the Court to adopt the position Respondent advocates, there would be not a different disposition in this case. Instead, were the Court to hold that *Apprendi* is not retroactively applicable to initial petitions under § 2255, the disposition of this case would be exactly the same as it is under the Court's order of December 20: Petitioner would remain in prison with utterly no relief from this Court. It follows that Respondent has failed to show that adopting its view of the law would change the disposition of this case one iota.

Respondent seeks to avoid this conclusion by arguing that the precedent created by the Court's December 20 order would change. (Resp't Br. at 2 n.3.) That statement may be true, but it is irrelevant. A "disposition," in this context, is "final settlement of a matter at a particular level." *Western Line Consolidated School Dist. v. Continental Cas. Co.*, 632 F.Supp. 295, 302 (N.D.Miss.1986). The final settlement of this matter at the district court level, as per the Court's order of December 20, is that Petitioner is entitled to no relief. That result would not change at all if the Court were to adopt Respondent's reasoning. The Court, accordingly, holds that Respondent has not established that a dif-

ferent disposition of the case would result from a correction of the Court's alleged error, and denies Respondent's motion on that ground.

Assuming, *arguendo*, that a different disposition would result if the Court were to embrace Respondent's analysis, the Court assesses the remainder of its reasoning. Respondent argues that this Court should conclude that it made a palpable error for three reasons: (1) the rule of *Apprendi* is not retroactive to initial motions pursuant to § 2255 because it fails the test of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); (2) the Court has opened the floodgates to "*thousands* of initial § 2255 motions"; and (3) Petitioner's failure to raise arguments under *Apprendi* at trial or on direct appeal procedurally barred him from raising those arguments in his motion. The Court will address these issues in succession.

### A. Retroactivity of *Apprendi* to initial petitions under § 2255

The Court begins by noting that "[v]ery few courts have dealt with the issue of whether *Apprendi* applies retroactively to an initial habeas corpus petition." *Klein v. United States*, 125 F.Supp.2d 460, 462 (D.Wyo.2000). With little guiding precedent, this Court addressed that very topic in its order of December 20. It now stands by that ruling.

■ Respondent argues that the rule of *Apprendi*[1] fails the standard delineated in *Teague* and therefore does not apply to initial 2255 petitions. The problem with this argument is twofold. First, Congress modified § 2255 after *Teague* through the adoption of the Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA"),[2] and ADEPA did "not codify the

---

1. The rule of *Apprendi* is that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir.2000) (internal quotation omitted).

2. Respondent seems exercised over the Court's referring to the statute as *"AD EPA"* instead of *"AE DPA."* (Resp't Br. at 7 n.6.) Courts, however, have long used both abbreviations, and this Court is in good company when it employs "ADEPA." *See, e.g., Gentry v. Trippett*, No. 97–1675, 1999 WL 98577, at *1 n. 1 (6th Cir. Jan. 27, 1999).

*Teague* approach to habeas review wholesale." *O'Brien v. Dubois,* 145 F.3d 16, 23 (1st Cir.1998); *cf. Ferrazza v. Tessmer,* 36 F.Supp.2d 965, 972 (E.D.Mich.1999) (Gadola, J.). The plain language of § 2255 militates toward the conclusion that ADE-PA did not codify, in particular, *Teague*'s approach to initial petitions under § 2255. Instead, the statute's language merely requires that one condition precedent be met for a petitioner to assert a right, in his initial 2255 petition, within one year of that right's initial recognition by the Supreme Court. That condition precedent is that the newly-recognized right have been "made retroactively applicable to cases on collateral review." 28 U.S.C.A. § 2255 (West 2000). If a newly-recognized right, moreover, has already been "made retroactively applicable to cases on collateral review," a *Teague* analysis (which determines retroactivity) is moot.

For reasons discussed at length in the Court's order of December 20, *Apprendi* has been "made retroactively applicable to cases on collateral review." *See Jackson,* 2000 WL 1855102, at *1–4. It follows that the condition precedent has been met in this case, and that Petitioner had one year from the *Apprendi* decision to assert his rights under the *Apprendi* doctrine in his first 2255 petition. Petitioner did so when the Court granted his leave to amend his initial petition. His petition thus validly contained arguments pertaining to *Apprendi,* and *Teague* was no obstacle to the Court's consideration of those arguments. *See Rodgers v. United States,* 229 F.3d 704, 705–06 & n. 1 (8th Cir.2000) (noting that the Eighth Circuit accepted review of *Apprendi* claims in initial 2255 petitions despite never having addressed whether *Apprendi* states a new rule of constitutional law; i.e., despite never having conducted a *Teague* analysis); *Doe v. United States,* 112 F.Supp.2d 398, 401–02 (D.N.J.2000) (allowing, without reference to *Teague,* a petitioner leave to amend his 2255 petition to include arguments under the *Apprendi* doctrine).

■ A second reason that Respondent's argument fails is that, even if the *Teague* standard applied to the *Apprendi* doctrine under these circumstances, the rule of *Apprendi* would still be retroactively applicable to this case. *Teague* requires that a new rule of criminal procedure will not apply retroactively on collateral review unless it (1) places certain kinds of "primary, private individual conduct" beyond the government's power to proscribe, or (2) the new rule is a "'watershed' rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *In re Green,* 144 F.3d 384, 386 (6th Cir.1998). *Apprendi* clearly announces a new rule because, by requiring the prosecution to plead in the indictment and prove beyond a reasonable doubt any fact, other than a prior conviction, that would increase the penalty for a crime beyond the statutory maximum, *Apprendi* imposes new obligations on the prosecution. *See id.* at 386. The rule of *Apprendi* would therefore have to fall within one of the two exceptions delineated in *Teague* if it were to apply to a collateral attack.

The *Apprendi* doctrine meets the second exception: it is, as Justice O'Connor stated without contradiction, "a watershed change in constitutional law." *Apprendi,* 120 S.Ct. at 2380 (O'Connor, J., dissenting). This is so because *Apprendi* requires that a reasonable-doubt standard apply to any fact, excepting that of a previous conviction, that would increase a crime's penalty beyond the statutory maximum. The reasonable-doubt standard is a "bedrock procedural element essential to fairness." *Darity v. United States,* 124 F.Supp.2d 355 (W.D.N.C.2000). In *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court held that a jury instruction that relieved the prosecution of the need to prove an offense beyond a reasonable doubt could never be harmless error, and Circuit Courts of Appeals have consistently construed the rule of *Sullivan* as falling within *Teague*'s second exception to retroactiv-

ity. *See Darity*, 2000 WL 1804736, at *2 (citing 28 Moore's Federal Practice, § 671.09[3][b] (3d ed.2000)). Because of the strong parallel between *Sullivan*'s requirement of a reasonable doubt standard and *Apprendi*'s requirement of the same standard, and because of Justice O'Connor's accurate characterization of the *Apprendi* doctrine as a watershed rule, this Court concludes that the *Apprendi* doctrine is a watershed rule of criminal procedure applicable to initial petitions under § 2255. *See, e.g., Hoffman v. Arave*, 236 F.3d 523, 546–48 (9th Cir.2001) (Pregerson, J., concurring) (reasoning that the *Apprendi* doctrine is a watershed rule); *Darity*, 2000 WL 1804736, at *2–3 (citing cases); *Doe*, 112 F.Supp.2d at 401–02; *United States v. Murphy*, 109 F.Supp.2d 1059, 1064 (D.Minn.2000) (reasoning that the *Apprendi* doctrine "is so grounded in fundamental fairness that it may be considered of watershed importance"); *People v. Beachem*, No. 1–99–0852, 2000 WL 1677715, at *4–8 (Ill.Ct.App. Dec. 6, 2000). *But see, e.g., United States v. Pittman*, 120 F.Supp.2d 1263, 1269–70 (D.Or.2000).

**B. Opening the floodgates to "thousands of initial § 2255 motions"**

The Court is not so sure that its ruling of December 20 will "open the floodgates to *thousands* of initial § 2255 motions" (Resp't Br. at 7) (emphasis in original). The impact of the Court's holding merely allows petitioners filing their initial petition under § 2255 within one year of the *Apprendi* decision to assert an argument hinging on *Apprendi*. More than half of that year has already transpired. Despite other federal courts' having held that *Apprendi* applies retroactively to such petitions, this Court has received dozens, not thousands or even hundreds, of petitions relating to *Apprendi*.

Respondent may yet be proved correct. It is possible that, as word of this holding and others like it spreads among prisoners, the Court will be inundated with petitions. For reasons enunciated in the Court's order of December 20, that is an eventuality that the Court may have to face. *See Jackson*, 2000 WL 1855102, at

*4 n. 1. The Court will not sacrifice the law's demands on the altar of expediency. In any event, few of such petitions would be likely to require much of the Government's or Court's time, because prisoners rarely are sentenced to a term that exceeds the "prescribed statutory maximum" for a crime, and therefore few prisoners will adduce facts that trigger the protections of *Apprendi*. *See Jackson*, 2000 WL 1855102, at *7.

**C. Procedural Bar**

█ Respondent argues that the Court committed palpable error because Petitioner's failure to raise the *Apprendi* doctrine at trial or on direct appeal procedurally barred him from addressing that issue on collateral attack. A petitioner who seeks to put forth an argument during collateral attack that he failed to raise at trial or on direct appeal must demonstrate cause for his failure to make such a contention on direct appeal, and he must prove that he suffered prejudice from that failure. *See United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Cause existed in this case because the Supreme Court decided *Apprendi* after the Sixth Circuit decided Petitioner's direct appeal. *See Miller v. United States*, 2000 WL 282649, at *3 (6th Cir. Mar. 13, 2000) (reasoning that "[c]ause exists for Miller's failure to raise this issue previously because *Bailey* was decided after his direct appeal and his initial § 2255 motion"); *Quigley v. United States*, 1998 WL 964248, at *2 (6th Cir. Dec.29, 1998).

█ In analyzing prejudice, the Court must assume that a petitioner's constitutional claim is meritorious. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir.1986). If failing to consider that assumably meritorious claim would actually prejudice a petitioner—i.e., if it would have actually and substantially disadvantaged him—the element of prejudice exists; if not, the element of prejudice does not exist. *Frady*, 456 U.S. at 170. Here, Petitioner's constitutional claim was that, under *Apprendi*,

his indictment was constitutionally defective and should be dismissed with prejudice. (Pet'r Br. at 5–16; docket entry 150.) If that constitutional claim were true, as the Court was obligated to assume under *Maupin*, then failing to consider that argument would obviously work to Petitioner's actual prejudice. The element of prejudice therefore existed when this Court considered Petitioner's substantive claim under *Apprendi*. Because the elements of cause and prejudice existed, Petitioner was not procedurally barred from bringing his *Apprendi* argument and the Court committed no palpable error in considering that argument.

Respondent disagrees, arguing that "[e]ven if one wanted to accept the argument that a 20 year statutory maximum pertained to count one under 21 U.S.C. § 841(b)(1)(C), petitioner" would have received the same sentence that he ultimately earned in this case. (Resp't Br. at 10.) The problem with this argument is that Petitioner was not merely arguing that, under *Apprendi*, a "20 year statutory maximum pertained to count one under 21 U.S.C. § 841(b)(1)(C)." He contended, as explained above, that *Apprendi* invalidated his entire indictment. If Petitioner's constitutional argument had been correct, as the Court was bound to assume for purposes of deciding whether that argument was procedurally barred, he would have been prejudiced by the inability to bring that argument on collateral attack.

## IV  CONCLUSION

Respondent, for the reasons set forth above, has not shown that this Court's order of December 20 contained palpable error or that, even if it did, a different disposition of the case would have resulted from a correction of such alleged errors.

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** Respondent's motion to reconsider [docket entry 155] this Court's order of December 20, 2000 is **DENIED.**

**SO ORDERED.**